IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Criminal No. 3:23-cr-14 |
| CLINT ADDLEMAN | |

**RESPONSE IN OPPOSITION TO DEFENDANT'S**
**MOTION TO CONTINUE TRIAL AND RESET DEADLINES**

AND NOW comes the United States of America, by its attorneys, Troy Rivetti, Acting United States Attorney for the Western District of Pennsylvania, and Maureen Sheehan-Balchon, Shaun E. Sweeney, and Samantha Stewart, Assistant United States Attorneys for said District, and respectfully submits this objection to Defendant Clint Addleman's Motion to Continue Trial and Reset Deadlines, Doc. No. 209. In support of its objection, the government submits the following:

**Procedural History**

On August 20, 2024, a grand jury sitting in the Western District of Pennsylvania returned a four-count Superseding Indictment charging the Defendant with possession of an unregistered firearm/destructive device, in violation of 26 U.S.C. § 5861(d) and 18 U.S.C. § 2 (Count One); conspiracy to maliciously destroy property by explosive or fire, in violation of 18 U.S.C. § 844(n) (Count Two); malicious destruction of property by explosive or fire resulting in death, in violation of 18 U.S.C. § 844(i) (Count Three); and conspiracy to distribute and possess with intent to distribute a quantity of methamphetamine, in violation of 21 U.S.C. § 846 (Count Four) (Doc. No. 39). Also charged in the Superseding Indictment was co-defendant, Kris Nevling.

On March 12, 2025, the Court issued an order severing the trials of the Defendant and co-defendant Nevling (Doc. No. 97). A Status Conference was held on March 19, 2025, at which time the parties agreed to the trial dates (Doc. No. 102), and they were subsequently scheduled on

March 20, 2025 (Doc. No. 107). Co-defendant Nevling proceeded to trial in August 2025. A guilty verdict was entered on August 27, 2025, for the charges at Counts One and Two of the Superseding Indictment (Doc. No. 200). The Defendant is scheduled to begin trial on October 27, 2025 (Doc. No. 107). On September 21, 2025, the Defendant filed a Motion to Continue Trial and Reset Deadlines, requesting that trial be continued due to Criminal Justice Act (CJA) funding concerns. (Doc. No. 209). The government objects.

The government has provided extensive discovery to the Defendant. Specifically, the government has provided in excess of 1,121 files to the Defendant between the initial Rule 16 Disclosure on September 24, 2024, and the 7th Supplemental Rule 16 Disclosure on September 18, 2025. The government has continued to provide additional discovery as it becomes available, and the government has also made physical evidence available for in-person examination and discovery. In sum, the government provided essentially full discovery, well-beyond the requirements of Rule 16.

## Argument

The right to a speedy trial does not inhere to the defendant only; rather, it is a right held by the government, the public, and crime victims. *Barker v. Wingo*, 407 U.S. 514, 519 (1972); *see also United States v. Lacerda*, 958 F.3d 196, 213 (3d Cir. 2020) (upholding District Court's decision to deny defense continuance request based on governments right to a speedy trial); 18 U.S.C. § 3771(a)(7). As the Supreme Court noted in *Barko*,

> The right to a speedy trial is generically different from any of the other rights enshrined in the Constitution for the protection of the accused. In addition to the general concern that all accused persons be treated according to decent and fair procedures, there is a societal interest in providing a speedy trial which exists separate from, and at times in opposition to, the interests of the accused. The inability of courts to provide a prompt trial has contributed to a large backlog of cases in urban courts which, among other things, enables defendants to negotiate more effectively for pleas of guilty

> to lesser offenses and otherwise manipulate the system . . . Finally, delay between arrest and punishment may have a detrimental effect on rehabilitation.

*Barker*¸ 407 U.S. at 519-20 (1972) (internal citations omitted).  The Court went on to note the unfair advantages that defendants obtain by utilizing delay as a tactic:

> A second difference between the right to speedy trial and the accused's other constitutional rights is that deprivation of the right may work to the accused's advantage. Delay is not an uncommon defense tactic. As the time between the commission of the crime and trial lengthens, witnesses may become unavailable or their memories may fade. If the witnesses support the prosecution, its case will be weakened, sometimes seriously so. And it is the prosecution which carries the burden of proof.

*Id.* at 521.

To ensure the protection of the government's and the public's right to a speedy trial, Congress enacted the Speedy Trial Act, codified at 18 U.S.C. § 3161, *et seq.*[1]  As the Supreme Court noted, "the [Speedy Trial] Act was designed with the public interest firmly in mind." *Zedner v. United States*, 547 U.S. 489, 501 (2006); *see also United States v. Lloyd*, 125 F.3d 1263, 1268 (9th Cir. 1997) ("[T]he right to a speedy trial belongs not only to the defendant, but to society as well." (cleaned up)).

In *Zedner*, the Supreme Court engaged in a detailed discussion of the Speedy Trial Act's legislative history and found that "the Act was designed not just to benefit defendants but also to serve the public interest by, among other things . . . preventing extended pretrial delay from impairing the deterrent effect of punishment." *Zedner*, 546 U.S. at 501.  The Court noted that one of the Senate Reports stated "'[T]he Act seeks to protect and promote speedy trial interests that go beyond the rights of the defendant; although the Sixth Amendment recognizes a societal interest

---

[1] For example, if a matter is delayed for any reason other than those specifically set forth in the Act, the Court must determine that "the ends of justice served by [granting the continuance] outweigh **the best interest of the public** and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A) (emphasis added).

in prompt dispositions, it primarily safeguards the defendant's speedy trial right – which may or may not be in accord with society's.'" *Id.* (quoting S. Re. No. 96-212, p. 29).

Crime victims also have the statutory right "to proceedings free from unreasonable delay." 18 U.S.C. § 3771(a)(7); *see also United States v. Biggs*, 431 F. Supp. 3d 1190, 1192 (D. Or. Feb. 7, 2018) (denying defense motion for continuance because, *inter alia*, such continuance would violate rights of "minor victims and witnesses" under 18 U.S.C. §§ 3771(a)(7) and 3509(j)). Under the Crimes Victims' Rights Act, the Court has a statutory obligation to ensure that "the crime victim is afforded the rights described" by the Act, including "the right to proceedings free from unreasonable delay." 18 U.S.C. § 3771(b)(1). The government is responsible for asserting the rights of crimes victims under the Crime Victims' Rights Act and the rights of the public under the Speedy Trial Act. 18 U.S.C. § 3771(d)(1); *see also Patiwana v. United States*, 924 F. Supp. 226, 239-40 (E.D. NY, Jun. 7, 1996) ("[T]he responsibility for safeguarding the public's right to a speedy trial rests squarely upon the prosecutor's office and the court.").

"In determining if a continuance should be granted, a court should consider: the efficient administration of criminal justice; the accused's rights, including an adequate opportunity to prepare a defense; and the rights of other defendants awaiting trial who may be prejudiced by a continuance." *United States v. Kikumura*, 947 F.2d 72, 78 (3d Cir. 1991), quoting *United States v. Fischbach and Moore, Inc.*, 750 F.2d 1183, 1195 (3d Cir. 1984), *cert. denied*, 470 U.S. 1029 (1985). In addition, the diligence of counsel in requesting the continuance is a relevant factor. *See United States v. Fisher*, 10 F.3d 115, 117 (3d Cir. 1993)(internal reference omitted).

Defendant's main argument is that his attorneys have not received authorization for payment. The United States Courts advised that, as of the week of July 7, 2025, CJA panel attorney

4

funds had been depleted. *See* https://www.uscourts.gov/about-federal-courts/defender-services/cja-panel-attorney-funds-information-fy-2025 (last visited September 23, 2025). As to the procedure for submitting payments, CJA panel attorneys were advised that "Panel payments will be deferred until funds become available. Please continue to file, process, and approve CJA vouchers as normal during the payment deferrals so that payments can be disbursed as soon as funding is available." *Id*. This circumstance is not unique to the Defendant and applied to all CJA payments nationwide.

Despite being aware of the funding issue and payment instruction in at least early July, defense counsel waited until five weeks before this trial (and after attending the Nevling trial) to seek a continuance on this basis. Defense counsel now argue that they may only defend their client once they have received clarity on their funding, *see* Doc. No. 209 at p. 4, implying a possibly open-ended continuance. *See id*. at p. 7 (requesting "[a] continuance of six months—**if** CJA funding becomes available in October"). The timing of this request is unjustifiable, and this factor weighs against granting Defendant's instant request for a continuance.

Further, both *United States v. Gray*, 878 F.2d 702 (3d. Cir. 1989) and *United States v. Kauffman*, 109 F.3d 186 (3d. Cir. 1997), relied on by defense counsel, are inapposite to this case. In *Gray*, there were a number of witnesses available whose testimony could have cleared the defendant of the crime. The attorney in the case, however, failed to subpoena two such witnesses suggested by his client, and made no attempt to hire an investigator to search for any other witnesses. In *Kauffman*, a psychiatrist who examined the defendant prior to trial issued a report stating that the defendant "was undoubtedly psychotic" at the time the crime was committed. 109 F.3d at 187. Despite the explicit exculpatory language in this letter, however, the trial attorney declined to investigate further the possibility of an insanity defense and instead advised the

defendant to plead guilty. These cases do not involve requests to continue trial, but rather, trial attorneys who failed to investigate the relevant facts which could have exculpated their respective clients. *See Kysor v. Price*, 58 F. App'x 540, 544 (3d Cir. 2002).[2]

Here, the history of the case demonstrates Defendant has been zealously and appropriately represented. Attorney Frank Walker has represented Defendant for over a year after being appointed to this matter on August 28, 2024 (Doc. No. 55). On February 12, 2025, defense counsel filed a Motion to Sever Defendant (Doc. No. 88), which was granted. Attorney Goldman was appointed on April 2, 2025 (Doc. No. 109). On July 1, 2025, defense counsel filed five pretrial motions, including a Motion for a Franks Hearing. *See* Doc. Nos. 128, 129, 130, 131, and 132. There is no dispute that defense counsel have retained an investigator, who was present for much of the Nevling trial. Since Attorney Walker was appointed over a year ago, defense counsel has mounted a zealous defense and there has been sufficient opportunity to have witnesses interviewed and evidence gathered for trial. *See United States v. Glenn,* No. 15-99-1, 2018 LX 58630, at *28 (E.D. Pa. Aug. 24, 2018)(denying motion for new trial based on denial of continuance where defendant sought to postpone trial because his private investigator was afforded neither the time nor the funds to interview certain witnesses).

Further, defense counsel sought and obtained 6 continuances in this case as to Defendant. *See* Doc. No. 70 (30 days), 73 (45 days), 85 (30 days), 89 (30 days), 111 (30 days), 113 (45 days), and 124 (5 days). "The efficient administration of criminal justice," therefore, carries significant weight in denying defense counsel's instant request. *United States v. Bittenbender*, 359 F. App'x

---

[2] Defendant cites also to *Ake v. Oklahoma,* 470 U.S. 68, 76 (1985), which likewise does not involve a request for a continuance. In that case, the Supreme Court extended the definition of "basic tools" to include the appointment of an expert in psychiatry for a defendant in a capital case when the defendant's sanity is a significant issue at trial and found that failure to appoint an expert in such a case is a denial of due process. *See Christy v. Horn*, 28 F. Supp. 2d 307, 320 (W.D. Pa. 1998).

6

298, 299 (3d Cir. 2009) (quoting *United States v. Fisher*, 10 F.3d 115, 117 (3d Cir. 1993) (denying defendant's request for a continuance where defendant previously received numerous continuances); *Fisher*, 10 F.3d at 118 (affirming denial of continuance where "granting the continuance would have impaired the efficient administration of justice" and "the district court had already granted numerous continuances."); *United States v. McGavitt*, 532 F. App'x 295, 299 (3d Cir. 2013)(affirming denial of continuance where defense counsel sought and obtained four continuances for the filing of pretrial motions).

The government appreciates that the Defendant has two attorneys, because it means that twice as many people have been able to review, digest, and distill the discovery and prepare any motions, legal arguments, or other courses of action based on it. The defendant should, therefore, be fully prepared to proceed.

There is simply no reason for the Defendant to delay this matter any further, particularly to the detriment of the government, the public, and the victim. It should also be repeated that counsel for Defendant, or their representatives, were present during much of the trial of co-defendant Nevling.

The government is aware of its obligation to provide *Jencks* material pursuant to 18 U.S.C. § 3500 and Federal Rule of Criminal Procedure 26.2, the disclosure of that information during the Nevling trial revealed the identity and/or location of the prosecution's trial witnesses and now could unnecessarily place those witnesses in jeopardy. The Defendant received a preview of his trial through the Nevling trial and that poses a substantial risk to the witnesses set to testify at Defendant's trial. Delaying the trial for any period of time increases such a risk.

This is a serious case – it is a serious case for the people of the Western District of Pennsylvania (involving a bomb explosion and fire in a densely-populated residential and business

area), for the various witnesses involved (both civilian and law enforcement), and certainly for the victim, who was killed in 2019, and her family.

Each passing day since October 4, 2019, is another day without closure for the victim's family, another day for witnesses to retire or move away, and another day for the memories of witnesses to fade. As described above, the Supreme Court has recognized the unfair advantage defendants obtain through prolonged pretrial postponements, and Congress has recognized the prejudice suffered by both crime victims and the public as a result of such delay.

In light of the early provision of large amounts of discovery to ensure the defendant would have adequate time to prepare for trial, and in light of the significant interests of the government, the public, and the victim in a prompt resolution in this matter, the government respectfully requests that this Honorable Court deny the Defendant's motion to Continue Trial and Reset Deadlines.

WHEREFORE, the government respectfully requests that the Defendant's Motion be denied, and that the Court schedule a status conference before trial-related filings are due beginning on October 6, 2025.

> Respectfully submitted,
>
> TROY RIVETTI
> Acting United States Attorney
>
> */s/ Maureen Sheehan-Balchon*
> MAUREEN SHEEHAN-BALCHON
> Assistant United States Attorney
> PA ID No. 78059
>
> */s/ Shaun E. Sweeney*
> SHAUN E. SWEENEY
> Assistant United States Attorney
> PA ID No. 53568

*/s/ Samantha Stewart*
SAMANTHA STEWART
Assistant United States Attorney
PA ID No. 53568