IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Criminal No. 3:23-cr-14 |
| CLINT ADDLEMAN | |

**UNITED STATES' MOTION IN LIMINE REGARDING ADMISSION
OF RELEVANT GRAPHIC EVIDENCE THAT IS MATERIAL
TO PROVE THE CHARGED OFFENSES**

AND NOW comes the United States of America, by its attorneys, Troy Rivetti, Acting United States Attorney for the Western District of Pennsylvania, Maureen Sheehan-Balchon, Shaun E. Sweeney, and Samantha Stewart, Assistant United States Attorneys for said district, and hereby files this Motion in Limine regarding the admission of a limited number of graphic, highly probative exhibits during the trial. This evidence is material and probative to establish the motive and intentionality of defendants Clint Addleman and Kris Nevling, aided and abetted by each other, in constructing and causing a destructive device to be constructed, carrying out the bombing, as well as to prove the malice, violent force, and extensive bodily and property injury that resulted from the defendants' deliberate use of a destructive device.

**ARGUMENT**

**I.  Charged Offenses Require Proof of Malicious Intent to Destroy a Property with a Destructive Device**

In and around early October 2019, defendants Addleman and Nevling, aided and abetted by each other, constructed and caused to be constructed a destructive device ("bomb"). They subsequently placed the bomb, and caused it to be placed, inside a package addressed to S.L.C. using a star symbol. S.L.C. was known by the nickname, "Star." The package's exterior also contained the words: "Sorry so late," "Sorry took so long," "Play it," and "From BF[.]"

1

In and around the early morning hours of October 4, 2019, defendants Addleman and Nevling, aided and abetted by each other, placed the package containing the bomb, and caused it to be placed, outside a multi-unit rental property at 327 East Market Street, Clearfield, Pennsylvania, where S.L.C. rented an apartment on the first floor. At or around 9:45 a.m. on October 4, 2019, the bomb detonated inside S.L.C.'s apartment, killing S.L.C. and destroying the property at 327 East Market Street, including by fire.

The Superseding Indictment charges defendant Addleman with possession of an unregistered firearm/destructive device (26 U.S.C. § 5861(d) and 18 U.S.C. § 2), conspiracy to maliciously destroy property by explosive or fire (18 U.S.C. § 844(n)), malicious destruction of property by explosive or fire resulting death (18 U.S.C. § 844(i), and conspiracy to distribute and possess with intent to distribute a quantity of methamphetamine (21 U.S.C. § 846) (Doc. No. 38). Accordingly, the Government will have to prove that the explosion which destroyed the property, and resulted in the death of S.L.C., was caused by an explosive bomb. These charges require proof that Addleman possessed a "destructive device," 26 U.S.C. § 5845(a)(8), (f), and conspired to "maliciously" damage or destroy any building, vehicle, or other property used in any activity affecting interstate commerce. 18 U.S.C. § 844(i), (n); see also United States v. Minerd, 112 F. App'x 841, 845 (3d Cir. 2004) (not precedential) (listing elements of § 844(i)). "Because Congress did not define the term 'maliciously,'" the Third Circuit "assume[s] that Congress adopted the common law definition of the term"—i.e., that the defendant "acted intentionally or with willful disregard of the likelihood that damage or injury would result." Minerd, 112 F. App'x at 845 (citing United States v. Gullett, 75 F.3d 941, 947 (4th Cir.1996)).

## II.     Graphic Evidence Is Relevant And Probative

During the trial, the United States will seek to admit a limited number of highly relevant and

necessary crime scene and autopsy images.[1]  Images of the deceased victim are extremely probative as to the question of whether this explosion occurred through the use of an explosive bomb, as opposed to some other cause.  These photos will also be probative of the defendants' specific intent and motive—that is, that Addleman and Nevling violently and lethally targeted the victim with an explosive device disguised as a birthday gift.  These exhibits will also assist the jury in receiving witness testimony as to the chronology of the events on October 4, 2019, and will provide the jury with clear depictions of the specific location of the victim during and immediately after the explosion and fire. Exhibits from the autopsy of the deceased victim will aid the jury in receiving the testimony of the clinical pathologist and illustrate findings as to the cause and manner of death of the victim.

Under the Federal Rules of Evidence, all evidence is admissible if it is relevant—if it tends to make the existence or nonexistence of a disputed material fact more probable than it would be without that evidence. Fed. R. Evid. 401, 402.  There is "a strong presumption that relevant evidence should be admitted." Forrest v. Beloit Corp., 424 F.3d 344, 355 (3d Cir. 2005) (citation omitted).  The district court has "the role of the gatekeeper to admit or exclude evidence."[2]  In re Unisys Sav. Plan Litig., 173 F.3d 145, 158 (3d Cir. 1999).  A district court may exclude relevant evidence if its probative value is "substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.  "Rule 403 is a rule of inclusion,

---

[1]  The United States will provide the defendant with its exhibit list on December 5, 2025, which will include the specified graphic images.  These images were previously provided to the defendant through discovery. Given the sensitive nature of the images, the proposed graphic exhibits will be submitted under seal for review by the Court and defense counsel.  See U.S.C. § 3771(a)(8) (crime victims have the right "to be treated with fairness and with respect for the victim's dignity and privacy").

[2]  To fulfill its gatekeeping role under Rule 403 of the Federal Rules of Evidence, upon review of the proffered exhibits, this Court will need to assess the probative value of the graphic exhibits against the elements of the charged offenses, and determine and articulate whether the risk of unfair prejudice substantially outweighs the probative value. See United States v. Cunningham, 694 F.3d 372, 384 (3d Cir. 2012).

3

generally favoring admissibility," United States v. Kolodesh, 787 F.3d 224, 237 (3d Cir. 2015)(citation omitted), so "courts may utilize [it] only rarely to cause the exclusion of evidence." United States v. Universal Rehab. Servs., Inc., 205 F.3d 657, 664-65 (3d Cir. 2000) (en banc); see also United States v. Gonzalez, 905 F.3d 165, 196 (3d Cir. 2018) (quoting United States v. Claxton, 766 F.3d 280, 302 (3d Cir. 2014)).

As the most direct and uncontroverted evidence of violent crimes, crime scene and autopsy images are generally admissible and relevant under Rule 401 when they have an articulable connection to an element of a charged offense. United States v. Escalante-Melgar, 567 F. Supp. 3d 485, 492-93 (D.N.J. 2021) (photographs of a murder scene were probative to "help the jury understand the timeline of the murder," and "corroborate the testimony of fact witnesses;" autopsy photographs were probative to support "technical testimony" by a medical examiner and ballistics expert. Any unfair prejudice from this "graphic content" did not substantially outweigh the "highly relevant" probative value); United States v. Con-ui, Cr. No. 3:13-123, 2017 WL 783437, at *4, *6, *7 (M.D. Pa. Mar. 1, 2017) ("[Defendant's] apparent willingness to concede certain facts, or conceding guilt, does not make the video irrelevant."). The Government has discretion to tell the jury the story of the case. Old Chief v. United States, 519 U.S. 172, 188 (1997) ("[T]he prosecution may fairly seek to place its evidence before the jurors, as much to tell a story of guiltiness as to support an inference of guilt, to convince the jurors that a guilty verdict would be morally reasonable as much as to point to the discrete elements of a defendant's legal fault.")

During trial, photographs of deceased victims are admissible when they have substantial probative value and are not offered for an impermissible purpose. See, e.g., United States v. Salameh, 152 F.3d 88, 122-23 (2d Cir. 1998) ("Probative evidence is not inadmissible solely because it has a tendency to upset or disturb the trier of fact." (citing Kuntzelman v. Black, 774

4

F.2d 291, 292 (8th Cir. 1985) (admission of crime scene photographs at a homicide trial is error only if the photographs are not even "arguably relevant and probative"), and United States v. Brady, 579 F.2d 1121, 1129 (9th Cir. 1978) (only on rare occasions when the evidence in question "is of such gruesome and horrifying nature that its probative value is outweighed by the danger of inflaming the jury" should it not be received in evidence)).  For example, the Third Circuit found that "death scene and autopsy photographs" were admissible under Rule 403, because the physical condition of the malnourished child victim was "highly probative" of the defendants' failure to conduct required home visits.  United States v. Manamela, 463 F. App'x 127, 131 (3d Cir. 2012)(not precedential); see also, Gov't of Virgin Islands v. Albert, 241 F.3d 344, 349 (3d Cir. 2001)(admission of a "gruesome" 45-minute video of a murder scene, which was "clearly relevant to demonstrate the Government's theory" of how the crime was committed and was inconsistent with the defense theory, was not an abuse of discretion).

      The fact that "photos might have been graphic does not render them unfairly prejudicial under Rule 403[.]"  United States v. Osborne, 739 F. App'x 11, 18 (2d Cir. 2018); see also United States v. Salim, 189 F. Supp. 2d 93, 98 (S.D.N.Y. 2002) ("[T]he graphic or disturbing nature of a photograph alone is not enough to render it inadmissible.") (citing United States v. Velazquez, 246 F.3d 204, 210-11 (2d Cir. 2001)).  In many instances, graphic images convey a relevant point much more persuasively than mere testimony alone.  United States v. Fields, 483 F.3d 313, 356 (5th Cir. 2007) ("[T]he Government's point that the body had decomposed too much for any physical evidence to be found was made more effectively with images than it would have been with vague generalizations.").  "[A] picture is worth a thousand words, and the Government is not required to sanitize its case because a victim has died," United States v. Werther, Cr. No. 11-434, 2013 WL 1410136, at *1 (E.D. Pa. 2013) (referencing United States v. Cross, 308 F.3d 308, 325 (3d Cir.

2002)); cf. United States v. Lujan, 603 F.3d 850, 858 (10th Cir. 2010) ("[T]he vicious, brutal nature of a defendant's conduct is not itself sufficient to justify a complete exclusion of evidence tending to show the defendant engaged in those acts.").

Autopsy photographs have regularly been admitted by federal courts.  See, e.g., Velazquez, 246 F.3d at 210-11; United States v. Frappier, 807 F.2d 257, 262 (1st Cir. 1986) (autopsy pictures "were not egregiously shocking; most if not all of them bore reference to medical testimony and corroborated [witness's] account of the murder"); Bunch v. Thompson, 949 F.2d 1354, 1365 (4th Cir. 1991); United States v. Greatwalker, 356 F.3d 908, 912-13 (8th Cir. 2004); United States v. Boise, 916 F.2d 497, 504 (9th Cir. 1990); United States v. Sarracino, 340 F.3d 1148, 1168-69 (10th Cir. 2003); Jacobs v. Singletary, 952 F.2d 1282, 1296 (11th Cir. 1992); United States v. Rezaq, 134 F.3d 1121, 1137-38 (D.C. Cir. 1998) (Government allowed to place several enlarged autopsy photographs on an easel beside jury box to prove death and cause); Spinks v. McBride, 858 F. Supp. 865, 868-69 (N.D. Ind. 1994).   In an illustrative case, the Tenth Circuit explained that autopsy photographs, though graphic by nature, are relevant and not unfairly prejudicial when used by the Government to prove its case:

> Although the [autopsy] photos and slides were undeniably gruesome, gruesomeness alone does not make photographs inadmissible. These photos and slides were a substantial aid in illustrating the testimony of the pathologist and they had considerable probative value not only in proving the nature of Valerie's injuries and the cause of her death, but also on the issue of malice aforethought. In light of this probative worth, their admission was not unduly prejudicial. Nor are they cumulative since, as the judge pointed out, they depict the body from different angles and vantage points than do the photos taken when investigators first discovered the body and thereby gave the jury a more complete understanding of the injuries.

United States v. Soundingsides, 820 F.2d 1232, 1243 (10th Cir. 1987) (internal citations and quotations omitted).

In the context of violent crimes and killings, courts have routinely determined that the probative value of crime scene and autopsy images is not substantially outweighed by the risk of unfair prejudice. See e.g., United States v. Simpson, 44 F.4th 1093, 1098 (8th Cir. 2022) (no abuse of discretion in admitting limited number of photographs of crime scene and autopsy); Fields, 483 F.3d at 354 ("[A]dmitting gruesome photographs of the victim's body in a murder case ordinarily does not rise to an abuse of discretion where those photos have nontrivial probative value."); Salameh, 152 F.3d at 122-23 (affirming admission of "graphic" and "disturbing" crime scene and medical photographs of World Trade Center bombing victims, including corpse of a pregnant woman, used to support expert's conclusions as to cause of death); cf. Rivers v. United States, 270 F.2d 435, 439 (9th Cir. 1959) ("The persistent assertion in criminal cases that the jury should not be permitted the benefit of relevant evidence because it is thought to be 'gruesome' constitutes, in effect, an attack upon the entire jury system. If a jury is incapable of performing its function without being improperly influenced by evidence having probative force, then the jury system is a failure. It is not a failure. Long experience convinces us of the ability and willingness of citizens called for jury duty to perform that duty with fidelity.").

In this prosecution of defendant Addleman, aided and abetted by defendant Nevling, the direct, graphic evidence and documentation of the results of Addleman's actions constitute the most compelling and necessary proof of multiple elements related to the nature of the destructive device, the detonation capability, and S.L.C.'s resultant death. During the trial, the United States will have to prove elements related to the possession and use of an explosive device to destroy property and malice aforethought. See also United States v. Minerd, 112 F. App'x 841, 845 (3d Cir. 2004) (not precedential). The direct, graphic evidence and documentation of the results of the defendant's actions constitute the most compelling and necessary proof of multiple elements related to the

7

nature of the destructive device and the detonation capability. See United States v. Vosburgh, 602 F.3d 512, 537-38 (3d Cir. 2010) (upholding the admission of evidence where it had a "tendency to prove any of the elements of the charges"). For example, the Government's expert fire scene investigator will base his opinion (that an explosive bomb was used) in part on the autopsy's findings regarding the presence of plastic shards in the brain and lung of the victim, as the speed and force required to penetrate the victim's body to this extent are compelling indicators that the plastic was at or very near the seat of the explosion, i.e., was part of the device which exploded. But, as to defendant Addleman, the probative value of evidence under Rule 403 is broader than its mere utility in proving an element; it also will establish motive, and other important non-elements. See, e.g., United States v. Foster, 891 F.3d 93, 110 (3d Cir. 2018) (evidence was not barred by Rule 403 where it supported prosecution's theory of the case and shed light on defendant's motive).

Given the specific charges and elements that the United States must prove, a limited number of graphic exhibits should be admitted pursuant to Rules 401 and 403. Among the images that the United States will seek to admit are images that powerfully demonstrate that the deceased victim in this case was in the privacy of her home at the time the explosive device disguised as a birthday gift from a friend was detonated, likely activated by the victim herself as instructed by the gift to "play it". The crime scene images are crucial to illustrate that the victim suffered the fatal result of the detonation of a destructive device and the resulting fire. Other images are necessary to prove the malice and amount of force deployed by the destructive device. Testimony alone is insufficient and cannot possibly substitute for images that will accurately, comprehensively, and unflinchingly prove the necessary elements, means, and motives that underlie this defendant's crimes.

During the trial, the United States also intends to offer testimony from a clinical

pathologist, who performed the autopsy examination upon the deceased victim. To corroborate and explain his testimony, the Government will offer a limited subset of autopsy images of the deceased victim. Just as with crime scene images, this visual evidence will illustrate the pathologist's testimony, demonstrate the nature and extent of fatal injuries to the victim, support the expert testimony regarding cause of death, and assist the jury in understanding the testimony of the medical examiners and other trial witnesses. No testimonial evidence could possibly equate to the visual demonstration and proof of malice-driven, intentional destruction by an explosive device or adequately illustrate the findings of the pathologist regarding the nature of the victim's injuries and the cause and manner of death.

The United States anticipates that the defendant may argue for the exclusion of graphic crime scene and autopsy images, citing both the risk of unfair prejudice[3] and alleging that such images are cumulative.[4] However, the volume of probative, graphic images is the direct result of the carnage that he himself wrought. The United States has selected a limited number of images to introduce that show different views and areas of the crime scene. The United States has also selected a limited number of images that depict different angles of the individual wounds, and the selected images do not depict the most grievous views of the autopsy findings.

---

[3] In arguing against the admission of such evidence, the defendant may invoke inapposite Third Circuit precedent that has developed in relation to child exploitation prosecutions. Importantly, there are critical distinctions between child sexual abuse material (CSAM) and the documentation of homicides and other violent crime. The Third Circuit has never authorized judges to bar all graphic evidence or to "scrub the trial clean." Cunningham, 694 F.3d at 391. Rule 403 of the Federal Rules of Evidence does not "shield [...] defendants who engage in outrageous acts, permitting only the crimes of Caspar Milquetoasts to be described fully to a jury." Cross, 308 F.3d at 325 (citation and quotation marks omitted). The Third Circuit, accordingly, has clarified that Rule 403 "does not protect defendants from devastating evidence in general." United States v. Heatherly, 985 F.3d 254, 266 (3d Cir. 2021).

[4] In United States v. Finley, 726 F.3d 483 (3d Cir. 2013), the Government offered, as trial exhibits, a small subset of the very graphic child sexual abuse material (CSAM) found on the defendant's computer; the trial court reviewed the exhibits and admitted them over a Rule 403 objection. Id. at 488-89. The Third Circuit found no abuse of discretion. The content of the videos was probative of the defendant's knowing possession and distribution of CSAM, and the videos, though disturbing, were "not unfairly prejudicial to the point where unfair prejudice substantially outweighed probative value." Id. at 492-94.

### III.   Conclusion

In this prosecution, given the defendant's malicious destruction of property by the use of an explosive device, graphic evidence is relevant, material, and critical to establish the defendant's commission of the charged offenses. Any risk of unfair prejudice does not substantially outweigh the highly probative value of the evidence, given that the United States has carefully distilled a subset of the most pertinent images and does not seek to offer all of the most graphic among them during the trial. Accordingly, the United States respectfully requests that this Court grant the United States' Motion in Limine and admit a limited number of highly relevant and probative graphic exhibits that depict the victim on scene and that document critical aspects of the victim's autopsy examination.

Respectfully submitted,

TROY RIVETTI
Acting United States Attorney

*/s/ Maureen Sheehan-Balchon*
MAUREEN SHEEHAN-BALCHON
Assistant United States Attorney
PA ID No. 78059

*/s/ Shaun E. Sweeney*
SHAUN E. SWEENEY
Assistant United States Attorney
PA ID No. 53568

*/s/ Samantha Stewart*
SAMANTHA STEWART
Assistant United States Attorney
PA ID No. 310068