# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 3:23-14-2 |
| | ) | Judge Stephanie L. Haines |
| CLINT ADDLEMAN | ) | |

## OPINION

A Federal Grand Jury returned a Superseding Indictment charging Defendant Clint Addleman ("Mr. Addleman") with four offenses. (ECF Nos. 38, 39). Mr. Addleman's trial is scheduled to begin on March 9, 2026. (ECF No. 236).

This Memorandum Opinion resolves three of the pending motions in limine in this matter: (1) the United States of America's ("the Government") "Motion in Limine to Admit Certain Facebook Messenger Chats Between the Victim and Her Associates" (ECF No. 275); (2) the "Government's Motion in Limine to Admit Victim's Statements of Fear to M.S." (ECF No. 276); and (3) Mr. Addleman's "Motion in Limine to Exclude Hearsay Evidence Pursuant to Fed. R. Evid. 802[.]" (ECF No. 281) (emphasis removed). Mr. Addleman has responded to the Government's Motions at ECF Nos. 275 and 276, (ECF Nos. 290, 291), and the Government has responded to Mr. Addleman's Motion at ECF No. 281. (ECF No. 287).

Upon due consideration of the filings and the record in this matter, and for the following reasons, the Court: (1) GRANTS IN PART and DENIES IN PART the Government's Motion at ECF No. 275; (2) DENIES the Government's Motion at ECF No. 276[1]; and (3) DENIES Mr. Addleman's Motion at ECF No. 281.

---

[1] The Court stresses that the Government's Motion at ECF No. 276 only contains one statement that M.S. would offer at trial—the statement on page two. (ECF No. 276 at 2). For the reasons below, the Court finds that that statement is inadmissible at trial, and the Court therefore denies the Government's Motion at ECF No. 276. In doing so, the Court

## I. Background

When the Grand Jury returned the Superseding Indictment on August 20, 2024, it charged both Mr. Addleman and his co-defendant, Kris Joseph Nevling ("Mr. Nevling"), with multiple offenses. (ECF No. 38). Specifically, at Count One ("Count I"), the Grand Jury charged Mr. Addleman and Mr. Nevling with Possession of an Unregistered Firearm/Destructive Device, in violation of 26 U.S.C. § 5861(d) and 18 U.S.C. § 2. (ECF No. 39 at 1). At Count Two ("Count II"), the Grand Jury charged Mr. Addleman and Mr. Nevling with Conspiracy to Maliciously Destroy Property by Explosive or Fire, in violation of 18 U.S.C. § 844(n). (ECF No. 39 at 1). At Count Three ("Count III"), the Grand Jury charged Mr. Addleman alone with Malicious Destruction of Property by Explosive or Fire Resulting in Death, in violation of 18 U.S.C. § 844(i). (ECF No. 39 at 1). Finally, at Count Four ("Count IV"), the Grand Jury charged Mr. Addleman alone with Conspiracy to Distribute and Possess with Intent to Distribute a Quantity of Methamphetamine, in violation of 21 U.S.C. § 846. (ECF No. 39 at 2).

On February 12, 2025, Mr. Addleman filed a Motion to Sever, requesting that he be tried separately from Mr. Nevling. (ECF No. 88 at 5). On February 21, 2025, Mr. Nevling expressed his "support of the Motion to Sever Defendant filed by Mr. Addleman." (ECF No. 92 at 1). For its part, on February 27, 2025, the Government "agree[d] that the requested severance should be granted." (ECF No. 95 at 4). On March 12, 2025, the Court entered a Memorandum and Order of Court providing that, "pursuant to Rule 14(a) of the Federal Rules of Criminal Procedure … the trials of [Mr. Nevling and Mr. Addleman] hereby are severed, and the two defendants shall be tried separately[.]" (ECF No. 97 at 2). The Court held Mr. Nevling's trial in August 2025. (ECF Nos.

---

clarifies that it is not passing on the propriety of any other potential lines of testimony by M.S., nor is the Court barring that individual from testifying during trial altogether.

2

185, 187-189, 192-195). At the conclusion of that trial, the jury found Mr. Nevling guilty of the offenses at Counts I and II of the Superseding Indictment. (ECF No. 200).

Mr. Addleman and the Government have submitted to the Court a "Joint Proposed Neutral Summary of [the Superseding] Indictment" summarizing the charges against Mr. Addleman and the factual allegations supporting those charges. (ECF No. 299). In terms of relevant factual allegations, that document provides as follows:

> The charges in Counts I, II, and III relate to the possession of a destructive device that resulted in an explosion and fire at 327 East Market Street, Clearfield, PA on October 4, 2019, and caused the death of S.L.C. The charge in Count IV relates to Mr. Addleman distributing methamphetamine throughout Clearfield County between January 2019 and October 2019 to S.L.C. and others.

> Mr. Addleman has pleaded not guilty to all four charges and denies that he either possessed an unregistered destructive device or maliciously utilized a destructive device to destroy property with Mr. Nevling or anyone else. Mr. Addleman denies that he conspired with intent to distribute or distribute methamphetamine.

(*Id.* at 2) (cleaned up).

## II. Discussion

The Court begins its discussion by articulating the legal standards that govern its resolution of the Motions at ECF Nos. 275, 276, and 281. The Court then analyzes each of those three Motions in turn.

### A.    Legal Standards Applicable to the Motions at ECF Nos. 275, 276, and 281

#### 1.    Relevance and Hearsay

Under Federal Rule of Evidence 401, evidence is relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Under Rule 402, relevant evidence is admissible unless: "(1) the United States Constitution; (2) a federal statute; (3) [the Federal Rules of Evidence]; or

(4) other rules prescribed by the Supreme Court" provide otherwise. Fed. R. Evid. 402. And "[i]rrelevant evidence is not admissible." *Id.*

Further, hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *United States v. Ramos*, 397 F. App'x 767, 770 (3d Cir. 2010) (citing Fed. R. Evid. 801(c)) (cleaned up)). "Hearsay is inadmissible unless a federal statute, the Supreme Court, or the Federal Rules of Evidence provide otherwise." *Neebe v. Ravin Crossbows, LLC*, 532 F. Supp. 3d 253, 257 (E.D. Pa. 2021) (citing Fed. R. Evid. 802); *Ramos*, 397 F. App'x at 770 ("A hearsay statement is inadmissible unless it falls within one of the recognized exceptions to the hearsay rule.").

Because the three Motions that this Opinion resolves all pertain to multiple statements that the parties agree constitute hearsay, and because the Government seeks to admit those statements under one (or more) of three particular exceptions to the rule against hearsay, the Court now overviews those three exceptions in turn.

### 2. Federal Rule of Evidence 803(1): Present-Sense Impressions

Federal Rule of Evidence 803(1) provides that a present-sense impression, which is a "statement describing or explaining an event or condition, made while or immediately after the declarant perceived it[,]" is "not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness[.]" Fed. R. Evid. 803(1). "A hearsay statement may be admitted under this exception if it explains or describes an event personally witnessed by the declarant, and if the declaration is made essentially contemporaneous to witnessing the event." *United States v. Green*, 556 F.3d 151, 155 (3d Cir. 2009).

In terms of the rationale for this exception:

[Its fundamental premise] "is that substantial contemporaneity of event and statement minimizes unreliability due to [the declarant's] defective recollection or

4

conscious fabrication." *United States v. Manfre*, 368 F.3d 832, 840 (8th Cir. 2004). "The idea of immediacy lies at the heart of the exception," thus, the time requirement underlying the exception "is strict because it is *the* factor that assures trustworthiness." 4 Christopher B. Mueller and Laird C. Kirkpatrick, FEDERAL EVIDENCE § 8:67, 559, 562 (3d ed. 2007). Put differently, the temporal requirement must be rigorous because the passage of time—or the lack thereof—is the effective proxy for the reliability of the substance of the declaration; hence the greater the passage of time, the less trustworthy the statement is presumed to be, and the more the scales should tip toward inadmissibility. *Manfre*, 368 F.3d at 840. Nevertheless, some brief temporal lapse is permissible to accommodate the human realities that the condition or event may happen so fast that the words do not quite keep pace. 4 FEDERAL EVIDENCE § 8:67, at 562.

*Green*, 556 F.3d at 155–56 (cleaned up).

Further, with respect to the contemporaneity requirement, on the one hand, the Third Circuit has cited cases from other circuit courts of appeals permitting the admission of the following statements under Rule 803(1): (1) a 911 phone call made *one to two minutes* immediately following the event that the call described, (2) a statement made *less than 60 seconds* after witnessing a robbery, (3) "a statement by [a] witness to police upon their arrival at [the] scene that defendant was threatening to kill her family … as [a] '*description of ongoing events*'", and (4) a statement regarding threats that was likely made *well within the twenty-three minutes* following those threats. *Id.* at 156 (emphasis added).  On the other hand, moving further away from the operation of this rule, the Third Circuit has noted that it is "unaware of any legal authority for the proposition that [a statement made] 50 minutes after the fact may be considered 'immediately thereafter'" and thus admissible under Rule 803(1). *Id.* (noting that it had "previously expressed skepticism that a statement made some 40 minutes after the fact could properly be admitted as a present-sense impression").

### 3.  Federal Rule of Evidence 803(2): Excited Utterances

Federal Rule of Evidence 803(2) provides that an excited utterance, which is a "statement related to a starting event or condition, made while the declarant was under the stress of excitement

that it caused[,]" is "not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness." Fed. R. Evid. 803(2). In the Third Circuit, there are four requirements for admissibility under this Rule: "(i) a startling occasion; (ii) a statement relating to the circumstances of the startling occasion; (iii) a declarant who appears to have had the opportunity to observe personally the events; and (iv) a statement made before there has been time to reflect and fabricate." *United States v. Brown*, 254 F.3d 454, 458 (3d Cir. 2001). The "rationale for the excited utterance exception lies in the notion that excitement suspends the declarant's powers of reflection and fabrication, consequently minimizing the possibility that the utterance will be influenced by self interest and therefore rendered unreliable." *Id.*

Notably, regarding the fourth requirement, that the statement must have been made before there has been time to reflect and fabricate, Rule 803(2) "does not require that, in order to be admissible, the statement be contemporaneous with the startling event, but rather *only with the excitement caused by the event*." *Id.* at 460 (emphasis added). Along these lines, the Third Circuit has observed that:

> In *United States v. Tocco*, 135 F.3d 116 (2d Cir. 1998), the Court of Appeals for the Second Circuit held an out-of-court statement properly admitted as an excited utterance by a declarant who was "all hyped up" and "nervous" even though it was made some *three hours* after the startling event. *Tocco*, 135 F.3d at 127–28. In *United States v. Phelps*, 168 F.3d 1048 (8th Cir. 1999), the Eighth Circuit held the statement of a "visibly distraught" declarant admissible as an excited utterance, although the statement was made 15 to 20 minutes after the starting event.

*Brown*, 254 F.3d at 460 (cleaned up) (emphasis in original) (further stating that where the temporal gap is "only a matter of one or a few minutes, courts [] often admit[] the asserted excited utterance").

### 4.  Federal Rule of Evidence 803(3): Then-Existing State of Mind

Federal Rule of Evidence 803(3) defines a then-existing mental, emotional, or physical condition as:

> A statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will.

FED. R. EVID. 803(3).

The "rule is now firmly established that '[t]here are times when a state of mind, if relevant, may be proved by contemporaneous declarations of feelings or intent.'" *United States v. Hernandez*, 176 F.3d 719, 726–27 (3d Cir. 1999) (quoting *Shepard v. United States*, 290 U.S. 96, 104 (1933)). However, "the scope of this exception must be limited to prevent it from devouring the rule." *Id.* at 727. Thus, "statements that are considered under … the state of mind exception, cannot be offered to prove the truth of the underlying facts asserted." *Id.* (cleaned up) (excluding a statement that the defense sought to admit under Rule 803(3) indicating that the defendant "had just arrived and expected to be paid" where that statement was "only relevant because of the implied assertion that he was not involved in the carjacking"); *cf. United States v. Gonzalez*, 905 F.3d 165, 201 (3d Cir. 2018) (affirming admission of victim's emails under Rule 803(3) where those emails demonstrated that the victim "was *aware* of defendants' actions and that those actions *were causing her emotional distress*, which are both *substantive elements of the cyberstalking offense that the Government was required to prove*") (emphasis added).

### B.    The Court Grants in Part and Denies in Part the Government's Motion at ECF No. 275

In the Government's Motion at ECF No. 275, it moves for the admission of five of S.L.C.'s Facebook chats under one or all of Rules 803(1), (2), and (3). (*See* ECF No. 275). Critically, the Government and Mr. Addleman appear to agree that all five chats (1) are relevant and (2) would

7

constitute inadmissible hearsay unless an exception applies. (ECF Nos. 275, 290). Therefore, the Court need not address those issues and instead need only analyze each chat to determine whether it is admissible as a present-sense impression, excited utterance, or a declaration of a then-existing state of mind.

### 1. The Chat at Roman Numeral I is Admissible as an Excited Utterance

The first chat that the Government seeks to admit is a conversation between S.L.C. and S.A., an on-and-off boyfriend, on August 3, 2019:

| | |
|---|---|
| **S.L.C.:** | … & OF COURSE Clint tried calling me AGAIN tonight … what I wouldn't do for you to just be "allowed" to move in here with me already dude!! … I HATE like NOT feeling 100% legit actually like safe. I SOOOO like SERIOUSLY wanna feel safe in my own home dude!! I HATE HAVING to live like this!! … |
| **S.A.:** | Im sorry babe if I could be there I would in a heart beat … |
| **S.L.C.:** | And Clint just tried calling me again … |
| **S.A.:** | Maybe you should just pay him dude. Is going through this really worth it? |
| **S.L.C.:** | Losing $1000 isnt worth it no |
| **S.A.:** | Your welfare and your life are worth way more than a 1000 dollars … |

(ECF No. 275 at 2).

For the following reasons, the Court finds that this chat satisfies the requirements of Rule 803(2) and is therefore admissible as an excited utterance. *See supra* Section II.A.3. Turning to the first requirement, the conversation contains significant indicia, from both S.L.C. and S.A., that there was an extremely close tether between: (1) a debt S.L.C. owed to Mr. Addleman ("[m]aybe you should just pay him" and "Losing $1000 isnt worth it no"), (2) a danger to S.L.C.'s life relative to that debt ("I HATE like NOT feeling … safe" and "Your welfare and your life are worth way

more than a 1000 dollars"), and (3) Mr. Addleman's calls to S.L.C. Indeed, this chat and other evidence that the Government intends to offer in this matter do lend support to the notion that Mr. Addleman's calls to S.L.C. were intimately related to a debt she owed to Mr. Addleman, a debt that made S.L.C. afraid for her life. In light of those facts, the Court readily finds that those calls constituted a startling event to S.L.C.

Turning to the second requirement, the Court observes that this chat begins with a mention by S.L.C. of one of Mr. Addleman's recent calls, indicating that that call was the impetus for S.L.C. beginning this chat in the first place. Further, S.L.C. interrupts the chat to inform S.A. that Mr. Addleman had just called her again. Given those facts, coupled with the overall tenor of the conversation, this chat clearly relates to the circumstances of the startling occasion (Mr. Addleman's calls).

Turning to the third requirement, because Mr. Addleman called S.L.C. personally, the declarant had the opportunity to personally observe the events in question.

Turning finally to the fourth requirement, Mr. Addleman's call that S.L.C. referenced at the beginning of the chat had apparently occurred earlier during the evening of August 3, 2019 ("Clint tried calling me AGAIN tonight"). Although it is unclear exactly how much time had elapsed between that call and the beginning of this chat, the fact that S.L.C. expressed fear for her safety that was still ongoing during her conversation with S.A. and that was tethered to the call from Mr. Addleman earlier in the evening leads the Court to find that S.L.C. engaged in this chat before she had time to reflect and fabricate—fear for one's life over a debt almost assuredly cannot dissipate in a matter of moments. And even if there were a question over the amount of time between the initial call and this chat as a whole, the fact that Mr. Addleman called S.L.C. again *while the chat was ongoing* means that S.L.C. surely had no time to reflect or fabricate her

statements toward the end of the chat. Accordingly, the Court finds that the fourth requirement is satisfied here. *Brown*, 254 F.3d at 460 ("Fed. R. Evid. 803(2) does not require that, in order to be admissible, the statement be contemporaneous with the startling event, but rather only with the excitement caused by the event.").

Therefore, because the Court holds that the requirements of Rule 803(2) are satisfied relative to the conversation at Roman Numeral I in ECF No. 275, the Court will permit the Government to admit that chat during trial in this matter.[2]

### 2. The Chat at Roman Numeral II is Inadmissible

The next chat that the Government seeks to admit under one or more of Rules 803(1), (2), and (3) is the following conversation between S.L.C. and an associate referred to as "D Roc Black" on August 9, 2019:

**S.L.C.:**       … He's like parked himself like outside in front of my apartment a couple times for a few hours. He's blowin up my phone tough as f[***] with calls & texts a few nights into the mornings.

**D Roc Black:** Whats his name

**S.L.C.:**       … Clint Addleman …

(ECF No. 275 at 2).

---

[2] Mr. Addleman contends that these chats are unreliable evidence. For example, he argues that "there are circumstances which suggest a motive for the victim to misrepresent her thoughts, depending on the timing these statements were allegedly made[.]" (ECF No. 290 at 5). In addressing this contention, the Court begins by noting that S.A. responded to S.L.C.'s statements about Mr. Addleman's calls and her concern relative to those calls by stating "[y]our welfare and your life are worth way more than a 1000 dollars[.]" Thus, the chat at Roman Numeral I includes not one, but two individuals connecting: (1) S.L.C.'s debt to Mr. Addleman, (2) Mr. Addleman's calls to S.L.C., and (3) a threat to S.L.C.'s physical wellbeing. Indeed, given the conversation at Roman Numeral I, the other statements in this Memorandum Opinion that the Court deems admissible, and the other evidence in this case, the Court finds that the chat at Roman Numeral I and the others that the Court deems admissible herein clearly have sufficient indicia of reliability to be admitted. *Cf. Green*, 556 F.3d at 157 ("We have indicated that courts may, in certain cases, require substantiation or other indicia of trustworthiness *in addition* to contemporaneity before admitting the declaration as a present-sense impression.") (emphasis in original). To be sure, the Court is not fully convinced it needs to address or linger long over this point at this juncture. Instead, the Court is simply saying that, to the extent it does need to consider indicia of trustworthiness relative to the statements it deems admissible today, the Court readily finds that those statements have sufficient indicia to be admitted.

Although this chat does pertain to Mr. Addleman's interactions with S.L.C., it contains no indications that S.L.C. sent it as or immediately after those interactions occurred. Therefore, there is no "substantial contemporaneity" between those interactions and this chat, *Green*, 556 F.3d at 156, and the statement is not admissible as a present sense impression.

Further, unlike the previous chat, this conversation contains precious little indication by S.L.C. that she was sending these messages contemporaneously with "the excitement caused by" her earlier interactions with Mr. Addleman. *Brown*, 254 F.3d at 460. Indeed, this chat appears to have occurred a fair amount of time after S.L.C.'s most recent interactions with Mr. Addleman and after at least a fair amount of the strain of them appears to have passed. Therefore, the Court holds that this conversation is not admissible as an excited utterance.

Finally, this chat does not appear to articulate any particular state of mind on the part of S.L.C. And even if it did, the Government has not explained how that state of mind would be inherently relevant in this case, outside of its implied assertion of other facts the Government is seeking to prove (i.e., that S.L.C. owed Mr. Addleman a debt).[3] *Hernandez*, 176 F.3d at 726–27. Therefore, the Court finds that this statement is not admissible as a declaration of a then-existing

---

[3] By way of further explanation, the Government states that this chat (and the others that it seeks to admit via ECF No. 275) is admissible because it "shed[s] light on [Mr. Addleman's] motive for the bombing and serve[s] to corroborate other evidence that the [G]overnment will adduce concerning S.L.C.'s debt to [Mr.] Addleman." (ECF No. 275 at 5). In addressing this contention, the Court begins by stressing that the conversation in the text above, like all of the other statements at issue in this Memorandum Opinion, were all made *by S.L.C., not Mr. Addleman*. That fact raises a question in the Court's mind—how does a declaration of S.L.C.'s state of mind go to showing Mr. Addleman's motive? If S.L.C. were simply afraid of Mr. Addleman, how would that create motive on his part?

In reflecting upon that question, and especially as the Court considers the Government's reference to "S.L.C.'s debt to [Mr.] Addleman[,]" the Court concludes that the Government wants to use the chat in the text above and others like it to prove the following: (1) S.L.C. was afraid of Mr. Addleman, (2) S.L.C. was afraid of Mr. Addleman *because she owed him a debt*, and (3) that debt created a motive on the part of Mr. Addleman. But this connection between S.L.C.'s statement above and Mr. Addleman's motive requires showing that S.L.C. *owed Mr. Addleman a debt*, meaning that these statements are actually being offered for the implied assertion that S.L.C. owed Mr. Addleman a debt, which is an impermissible use of a statement under Rule 803(3). *Hernandez*, 176 F.3d at 727 (holding that the "defendant's statement that he had just arrived and expected to be paid was only relevant because of the implied assertion that he was not involved in the highjacking[,]" meaning that that statement was inadmissible under Rule 803(3)).

state of mind. Accordingly, because this statement is hearsay that does not fall within an exception, the Court will bar the Government from introducing it at trial.

### 3. The Chat at Roman Numeral III is Admissible as an Excited Utterance

The third chat that the Government seeks to admit is the following conversation between S.L.C. and an associate referred to as "D Roc Black" that occurred on August 12, 2019:

> **S.L.C.:** I wish you were serious about helping me with this dude that's trying to legit kill me!! Just sayin
>
> **D Roc Black:** I am helping u tf babe
>
> **S.L.C.:** He just threatened me & was outside my apartment again today/& tonight. I have a HUGE feeling that he's gonna get me before anyone believes me whenever I say I'm gonna end up dead …. I am f[***]ing 100 serious!! I am scared.really scared dude!!

(ECF No. 275 at 3).

As with the chat at Roman Numeral I, the Court holds that this conversation is admissible as an excited utterance. With respect to the first requirement, the Court reiterates that the chat at Roman Numeral I and other evidence in this case tend to show that S.L.C. owed a debt to Mr. Addleman. Further, the chat at Roman Numeral III clearly stemmed from Mr. Addleman just threatening her ("[h]e just threatened me"), a fact that made S.L.C. fear for her life ("I have a HUGE feeling that he's gonna get me before anyone believes me whenever I say I'm gonna end up dead …. I am f[***]ing 100 serious!! I am scared.really scared dude!!"). To be sure, when an individual is threatened by another to whom that individual owes a debt, that event constitutes a startling occasion to the one threatened.

Turning to the second requirement, this chat begins with a reference to S.L.C.'s fear for her life relative to Mr. Addleman ("I wish you were serious about helping me with this dude that's trying to legit kill me!!"), and S.L.C. mentions Mr. Addleman's threat very quickly after the chat

begins ("[h]e just threatened me"). Therefore, this chat relates to the circumstances of the startling occasion (the threat).

Turning to the third requirement, because Mr. Addleman threatened S.L.C. directly, she observed the startling event personally.

Finally, turning to the fourth requirement, because S.L.C. engaged in this chat *very shortly after* Mr. Addleman threatened her ("[h]e *just* threatened me") (emphasis added), and because she was clearly still operating under the strain caused by the event ("I have a HUGE feeling that he's gonna get me before anyone believes me whenever I say I'm gonna end up dead" and other similar statements throughout the chat), the Court finds that this chat was written contemporaneously with "the excitement caused by" Mr. Addleman's threat to S.L.C. *Brown*, 254 F.3d at 460.

Accordingly, because the Court holds that the requirements of Federal Rule of Evidence 803(2) are satisfied relative to the chat at Roman Numeral III, the Court will permit the Government to admit that conversation during trial in this matter.

### 4. The Chat at Roman Numeral IV is Admissible as an Excited Utterance

The fourth chat that the Government seeks to admit is the following conversation between S.L.C. and J.G., a friend, on August 12, 2019:

| | |
|---|---|
| **S.L.C.:** | I'm f[***]ing scared to death right now |
| **S.L.C.:** | If you could maybe stop by tonight that would be so great. Its wayyy important as f[***]!! |
| **J.G.:** | Whats wrong |
| | … |
| **S.L.C.:** | OK … in case I don't see you ever again. Keep it real.be safe.I love you & please get Clint for me. |
| **J.G.:** | What is he f[***]ing woth you again |

| | | |
|---|---|---|
| **S.L.C.:** | He has been!! He never stopped!! | |
| | … | |
| **S.L.C.:** | I think I am gonna end up dead forreal | |
| **S.L.C.:** | I am in tears j[] … I'm scaried | |
| | … | |
| **S.L.C.:** | Its just his threats seem more like promises now & he is & or/was sitting outside my apartment!! | |
| **J.G.:** | Why does this like gotta happen when I'm farther away than usual | |
| **S.L.C.:** | It is what it is … I am now legit really f[\*\*\*]ing scared due!! I have no one here to help protect me &/or any guns or good weapons!!! I am just gonna have to take the bullet that's gonna be fed to me | |

(ECF No. 275 at 3).

As with the chats at Roman Numerals I and III, the Court holds that this conversation is admissible as an excited utterance. With respect to the first requirement, the Court reiterates that the chat at Roman Numeral I and other evidence in this case support a finding that S.L.C. owed a debt to Mr. Addleman. Further, the chat at Roman Numeral IV evidently stemmed from Mr. Addleman either currently or recently being outside of S.L.C.'s apartment ("he is & or/was sitting outside my apartment"), and that fact made S.L.C. fear for her life ("I'm f[\*\*\*]ing scared to death right now" and "I am just gonna have to take the bullet that's gonna be fed to me"). The Court readily finds that, when an individual owes a debt to another that makes that individual fearful for her life, and when the one owed the debt shows up at the apartment of the one owing the debt, that event constitutes a startling occasion to the one who owes the debt.

Turning to the second requirement, this chat begins with a reference to S.L.C.'s fear over Mr. Addleman's current or recent presence at her apartment ("I'm f[\*\*\*]ing scared to death right

14

now") and then continues by addressing that subject almost exclusively. Therefore, this chat relates to the circumstances of the startling occasion.

Turning to the third requirement, because S.L.C. saw Mr. Addleman outside her apartment ("he is & or/was sitting outside my apartment"), she observed the startling event personally.

Finally, turning to the fourth requirement, because S.L.C. engaged in this chat *while* or, apparently, *shortly after* Mr. Addleman was present at her apartment ("he is & or/was sitting outside my apartment"), and because she was clearly still operating under the strain caused by the event ("I think I am gonna end up dead forreal" and other similar statements throughout the chat), the Court finds that this chat was written contemporaneously with "the excitement caused by" Mr. Addleman's presence at S.L.C.'s apartment. *Brown*, 254 F.3d at 460.

Accordingly, because the Court holds that the requirements of Federal Rule of Evidence 803(2) are satisfied relative to the chat at Roman Numeral IV, the Court will permit the Government to admit that chat during trial in this matter.

### 5. The Chat at Roman Numeral V is Inadmissible

The fifth chat that the Government seeks to admit under Federal Rule of Evidence 803(1), (2), or (3) is the following conversation between S.L.C. and an associate referred to as R.L. on September 9, 2019:

| S.L.C.: | F[***] that!! F[***] living ... period dude!! |
|---|---|
| R.L.: | ... |
| S.L.C.: | I am really hoping Clint wasnt just playing earlier whenever he said he was coming for me tonight!! I have my door unlocked & am waiting for him. |
| R.L.: | Don't do that Hun I know u fill like live is not worth living but u will find something to live for |

(ECF No. 275 at 3–4).

15

Like the chat at Roman Numeral II, although this conversation does pertain to an interaction between Mr. Addleman and S.L.C., it contains no indications that S.L.C. sent the messages therein as or immediately after that interaction occurred—"earlier" could well have been several hours, or even days, before S.L.C. engaged in this chat with R.L. Therefore, there is no "substantial contemporaneity" between Mr. Addleman's interaction with S.L.C. and the chat at Roman Numeral V. *Green*, 556 F.3d at 156. Accordingly, this statement is not admissible as a present sense impression.

Further, although this chat does contain some excited utterances ("F[***] that!! F[***] living … period dude!!"), a moderate amount of time appears to have passed since S.L.C.'s interaction with Mr. Addleman, and she appears to have engaged in this conversation after at least a fairly significant portion of "the excitement caused by" that interaction had passed. *Brown*, 254 F.3d at 460. Indeed, the tenor of this chat is quite unlike those at Roman Numerals I, III, and IV, and S.L.C.'s statement that she had her "door unlocked" and was waiting for Mr. Addleman belies a significant measure of reflection that is inconsistent with an excited utterance. *Id.* at 458 (noting that the fourth requirement of an excited utterance is that it be made "before there has been time to reflect and fabricate"). Therefore, the Court holds that this conversation is not admissible as an excited utterance.

Finally, this chat does not appear to articulate any particular state of mind on the part of S.L.C. And even if it did, the Government has not explained how that state of mind would be inherently relevant in this case, outside its implied assertion of other facts the Government is seeking to prove, making this conversation inadmissible under Rule 803(3). *See supra* Section II.B.2 n.3. Therefore, the Court holds that this chat is not admissible as a declaration of a then-existing state of mind.

Accordingly, because the conversation at Roman Numeral V is not admissible under Rule 803(1), (2), or (3), the Court finds that it is hearsay that does not fall within an exception, and the Court will bar the Government from introducing it at trial.

In short, the Court grants in part and denies in part the Government's Motion at ECF No. 275. Specifically, the Court will permit the Government to introduce the chats at Roman Numerals I, III, and IV at trial, but the Court will not permit the Government to introduce the chat at Roman Numeral II or the chat at Roman Numeral V.

### C.    The Court Denies the Government's Motion at ECF No. 276

In the Government's Motion at ECF No. 276, it seeks to admit statements by S.L.C. to M.S., who was an associate of S.L.C. (*See* ECF No. 276). Specifically, the Government mentions that M.S. gave a statement to two Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") Special Agents on November 8, 2021. (ECF No. 276 at 2). During that interview, "'[M.S.] stated that [S.L.C.] (verbally) told her that she ([S.L.C.]) was scared of ADDLEMAN because she owed him a lot of money. [M.S.] stated that [S.L.C.] was physically scared of leaving her house because of it (owing ADDLEMAN money).'" (*Id.*).[4]

Critically, the Government and Mr. Addleman appear to agree that this statement is both: (1) generally relevant within the context of the case and (2) inadmissible hearsay unless an exception applies. (ECF Nos. 276, 291). Further, the sole exception under which the Government seeks to admit this statement is Rule 803(3). (ECF No. 276 at 3). Therefore, the Court confines its analysis to determining whether this statement is admissible at trial as a declaration of a then-existing state of mind.

---

[4] The Court reiterates that this is the lone statement by M.S. that the Government references in its Motion at ECF No. 276. Therefore, the analysis in the text above only applies to this statement and others like it. The Court again stresses that it is not presently barring M.S. from testifying at trial, nor is the Court passing on the propriety of other lines of testimony by M.S.

In analyzing the admissibility of this statement under Rule 803(3), the critical question becomes whether this statement is being offered "to prove the truth of the underlying facts asserted[,]" which is an impermissible use of a statement under that Rule. *United States v. Hernandez*, 176 F.3d 719, 727 (3d Cir. 1999) (internal quotation marks and citation omitted). In support of the admission of this statement, the Government argues that it is relevant because it sheds "light on [Mr.] Addleman's motive for the bombing and serve[s] to corroborate other evidence that the [G]overnment will adduce concerning S.L.C.'s debt to [Mr.] Addleman." (ECF No. 276 at 3). The Court has already analyzed the intimately related issue of whether statements of S.L.C.'s fear of Mr. Addleman are admissible under Rule 803(3) for the implied assertion that S.L.C. owed Mr. Addleman a debt, giving Mr. Addleman motive to harm S.L.C., and found that such statements are not admissible under that Rule. *See supra* Section II.B.2. n.3. The Court now addresses the closely related issue of whether a statement of S.L.C.'s fear of Mr. Addleman that explicitly tethers her fear to the debt ("'[S.L.C.] (verbally) told [M.S.] that she ([S.L.C.]) was scared of ADDLEMAN because she owed him a lot of money'") is admissible under Rule 803(3).

As the Court explained above, *see supra* Section II.A.4, in *United States v. Gonzalez*, 905 F.3d 165 (3d Cir. 2018), the Third Circuit affirmed the admission of emails that offered the victim's "depictions of the defendants' acts in the context of how those acts affected her emotional state" under Rule 803(3). *Id.* at 201. And the Third Circuit did so because the emails "demonstrated that [the victim] was *aware* of defendants' actions and that those actions *were causing her emotional distress*, which are both *substantive elements of the cyberstalking offense that the Government was required to prove*[.]" *Id.* (emphasis added). Therefore, when a mental state itself is inherently relevant, such as when that mental state is an element of an offense, the statement within which the mental state is contained is admissible under Rule 803(3).

Conversely, in *United States v. Hernandez*, 176 F.3d 719 (3d Cir. 1999), the Third Circuit explained that "statements that are considered under … the state of mind exception, cannot be offered to prove the truth of the matter asserted." *Id.* at 727 (cleaned up). For that reason, in *Hussey v. Chase Manhattan Bank*, No. A. 02-CV-7099, 2005 WL 1787571 (E.D. Pa. July 27, 2005), the District Court excluded the plaintiff's "out-of-court statement that he did not receive benefit information from [d]efendants" where plaintiff sought admission of that statement "to establish that [d]efendants in fact failed to provide [him] with the information he needed to determine whether he was eligible to participate in the excess LTD benefit plan for year 1999." *Id.* at *7 (internal quotation marks and citation omitted). Notably, the District Court excluded that statement because such use of it would "clearly violate[] Rule 803(3)'s requirement that a hearsay statement cannot be admitted to prove the truth of the fact remembered or believed." *Id.*

The Court finds that S.L.C.'s statement to M.S. above is very much like the statement at issue in *Hussey* and very much unlike the emails at issue in *Gonzalez*. Indeed, the Court cannot see any meaningful, inherent relevance to S.L.C.'s fear of Mr. Addleman within the context of this case. Rather, S.L.C.'s fear of Mr. Addleman is only relevant because of its tether to the explicit assertion that S.L.C. owed Mr. Addleman a debt, which in turn gave Mr. Addleman motive for the bombing.[5] Therefore, the Court finds that S.L.C.'s statement to M.S. is actually being offered to prove the truth of the fact remembered or believed (i.e., the debt) and is accordingly inadmissible under Rule 803(3). *Hussey*, 2005 WL 1787571, at *7.

---

[5] As the Court explained earlier, *see supra* Section II.B.2. n.3, S.L.C.'s fear of Mr. Addleman alone does not have any relevance to proving motive. Rather, her fear of Mr. Addleman tends to prove motive *only when that fear is first tethered to owing the debt*, meaning that the admission of the evidence of the fear is about proving the existence of the debt.

Therefore, the Court denies the Government's Motion at ECF No. 276 and will bar the Government from admitting at trial this statement by S.L.C. to M.S.[6]

### D.    The Court Denies Mr. Addleman's Motion at ECF No. 281

In his Motion at ECF No. 281, Mr. Addleman seeks to exclude multiple pieces of evidence as inadmissible hearsay. (*See* ECF No. 281). However, based on the Government's response to Mr. Addleman's Motion, (*see* ECF No. 287), the Court understands all issues of the issues he raises therein, except for one, to now be mooted by the operation of one or more of the following: (1) the fact that the Government does not seek to introduce the testimony that Mr. Addleman references, (2) the fact that the evidence Mr. Addleman references has been addressed in the course of this Court's resolution of ECF Nos. 275 and 276, or (3) the fact that the evidence Mr. Addleman references has been (or will be) addressed by the Court's other rulings on pending motions in limine. (ECF No. 287 at 13); *United States v. Mitchell*, No. 2:09-CR-105, 2013 WL 12202656, at *3 (W.D. Pa. Sept. 27, 2013) ("The Government submits that it has no intention of introducing such evidence in its case-in-chief. Accordingly, the motion will be denied as moot.")[7]

---

[6] The Court notes that the Third Circuit has "repeatedly held that a prosecutor is entitled to considerable latitude in summation to argue the evidence and any reasonable inferences that can be drawn from that evidence." *United States v. Lee*, 612 F.3d 170, 194 (3d Cir. 2010) (internal quotation marks and citation omitted). Therefore, the Court is in no way presently barring the Government from contending, during its closing argument, that other evidence in this case shows: (1) that S.L.C. was afraid of Mr. Adleman, (2) that S.L.C. was afraid of Mr. Addleman because she owed him a debt, and that (3) that debt created motive for Mr. Addleman's alleged actions in this matter.

[7] The Court notes that there is not perfect clarity regarding the Government's response to the items cited in paragraph 29 of Mr. Addleman's Motion at ECF No. 281. (ECF No. 281 at 5). At this time, the Court understands the Government to have responded to the items cited in that paragraph by saying that the Government either will not seek to admit those items or has sought their admission in other motions. In the event the Court is incorrect in that understanding, meaning that at least some of the items Mr. Addleman cites in paragraph 29 are live issues, the Court observes that Mr. Addleman has given the Court no clarity regarding the particular statements he seeks to exclude, the contents of those statements, or the like. Therefore, the Court could not rule on those issues at this time in any event. If there is an issue raised in paragraph 29 that is neither mooted by the Government declining to attempt to introduce the evidence at trial nor resolved within the Court's rulings on the motions in limine, the Court will permit objections and argument over any such issue during trial.

The lone remaining issue before the Court in light of ECF Nos. 281 and 287 is the admissibility of the following Facebook Messenger chat between S.L.C. and M.W., a neighbor-friend of S.L.C.'s, on the morning of the bombing[8]:

| | |
|---|---|
| **S.L.C.:** | Hey hit me up whenever you get this |
| **M.W.:** | What's good? I was actually planning on hitting you up today, hopefully that last thing comes |
| **S.L.C.:** | I was sorta wondering since you're only next door if you'd come over & open this weirdo creepy scary box I got in the middle of the night?!? I'm honestly kind of scared as f[***] to open this box alone/by myself!! |
| **S.L.C.:** | [PHOTO OF PACKAGE] |
| **M.W.:** | WoW that's crazy! Any idea who it's from? |
| **S.L.C.:** | It's been sitting in my living room for hours now!! |
| **M.W.:** | And yeah I'll come over at like 9:45 |
| **S.L.C.:** | & nope!! No idea!! & No one has even hiddened that they were gonna or did.drop anything off. I've been awake all night & I heard no one knock on my door or anything ... so I am a lil f[***]ing freaked out ... |
| **M.W.:** | That's f[***]ed up |
| **S.L.C.:** | Yes very much so!! |

(ECF No. 287 at 14–15).

---

[8] The Court notes that Mr. Addleman contends that the timecodes on the chats, which were made by Facebook, are inadmissible hearsay. (ECF No. 281 at 4–5). In response, the Government points to *United States v. Browne*, 834 F.3d 403 (3d Cir. 2016), which does offer what is at least dicta from the Third Circuit indicating that timestamps on Facebook chats may be admissible as Business Records under Federal Rule of Evidence 803(6). *Browne*, 834 F.3d at 411. Although the parties do not offer significant argument on this score, the Court preliminarily finds that the timestamps on the Facebook chats are admissible under Rule 803(6), subject to further argument at trial, if necessary. However, the Court observes that the parties have entered into stipulations that may well resolve this issue. (ECF No. 304 at 3–4).

The Government seeks the admission of all or part of this conversation under Rule 803(1), (2), or (3), or, alternatively, the residual hearsay exception found in Rule 807. (*Id.* at 15–16). For the following reasons, the Court finds that the chat is admissible as an excited utterance.

With respect to the first requirement, the Court reiterates that there is evidence in this case indicating that S.L.C. owed Mr. Addleman a debt that made her fear for her life, and there is also evidence indicating that Mr. Addleman was consistently contacting her related to that debt. It is in that context that the event discussed within this conversation—the unannounced arrival of a "weirdo creepy scary" box at S.L.C.'s apartment "in the middle of the night", a time when reputable delivery companies typically do not leave packages at one's home, arises. Against the backdrop of the events of August and September 2019, the Court finds that this unannounced arrival of a "weirdo creepy scary" box at S.L.C.'s apartment "in the middle of the night" certainly constitutes a startling event, as does its continuing presence within her apartment after she brought it inside her home.

Turning to the second requirement, this chat has for its primary (and indeed almost sole) subject the unannounced arrival of this box at, and its presence within, S.L.C.'s apartment. Therefore, this chat relates to the circumstances of the startling occasion.

Turning to the third requirement, because S.L.C. apparently picked the box up, brought it into her apartment, and was looking at it at when she sent the messages to M.W., S.L.C. observed the startling event personally.

Finally, turning to the fourth requirement, it is true that the box had been present within S.L.C.'s living room "for hours" whenever she was sending the messages to M.W. However, "hours" could (and likely does) mean two or three hours.[9] Further, this conversation as a whole

---

[9] The Court briefly explains its point on this score. In the chat, S.L.C. indicated that she received the box "in the middle of the night[,]" which the Court will assume for purposes of argument was approximately 3:00 A.M. Eastern Standard

evidences the fact that S.L.C. was still extremely concerned about the box's unannounced presence at (and within) her home while sending those messages ("I'm honestly kind of scared as [f***] to open this alone/by myself!!" and "I heard no one knock on my door or anything … so I am a lil f[***]ing freaked out …"). Therefore, because: (1) S.L.C. may well have had myriad concerning interactions with Mr. Addleman over the months preceding this box's arrival at her home, (2) this box had arrived in a very unorthodox and concerning manner, (3) no more than a few hours had passed since S.L.C. found the box, and (4) S.L.C. clearly manifested that she was still under extreme duress whenever she was conversing with M.W., the Court finds that this chat was written contemporaneously with "the excitement caused by" the arrival of the box at S.L.C.'s apartment and its presence therein. *Brown*, 254 F.3d at 460.

Accordingly, the Court holds that this chat between S.L.C. and M.W. on the morning of the bombing is admissible as an excited utterance, and the Court denies Mr. Addleman's Motion at ECF No. 281 insofar as he seeks to bar its admission at trial.

## III.    Conclusion

In sum, the Court grants in part and denies in part the Government's Motion at ECF No. 275. Specifically, the Court will permit the Government to introduce the chats at Roman Numerals I, III, and IV in ECF No. 275 at trial, but the Court will not permit the Government to introduce the chat at Roman Numeral II or the chat at Roman Numeral V.

Further, the Court denies the Government's Motion at ECF No. 276. The Government may not introduce at trial the statements of S.L.C. to M.S. set forth in ECF No. 276.

---

Time ("EST"). However, S.L.C. did not hear anyone knock, leading the Court to *infer* that she did not go outside to find the box until closer to the time the sun rises—perhaps 5:30 or 6:00 A.M. EST. Further, based on the parties' Stipulation regarding UTC time, (ECF No. 304 at 4), it appears that S.L.C. sent the first message in this chat at approximately 7:57 A.M. EST. If all of the foregoing is roughly accurate, then S.L.C. was only aware of the box for approximately two to three hours at the time she engaged in this conversation with M.W.

Finally, the Court denies Mr. Addleman's Motion at ECF No. 281. The Court will permit the Government to introduce at trial the Facebook conversation between S.L.C. and M.W. on the morning of the bombing. The remaining arguments by Mr. Addleman in ECF No. 281 appear to the Court to be mooted as this juncture.

An appropriate Order will be entered.

Dated:  March 6, 2026

Stephanie L. Haines
United States District Court Judge