**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 3:23-14-2 |
| | ) | Judge Stephanie L. Haines |
| CLINT ADDLEMAN | ) | |

**<u>OPINION</u>**

On August 20, 2024, a Federal Grand Jury returned a Superseding Indictment charging Defendant Clint Addleman ("Mr. Addleman") and his Co-Defendant, Kris Joseph Nevling ("Mr. Nevling"), with multiple offenses. (ECF No. 38). Specifically, at Count One ("Count I"), the Grand Jury charged Mr. Addleman and Mr. Nevling with Possession of an Unregistered Firearm/Destructive Device, in violation of 26 U.S.C. § 5861(d) and 18 U.S.C. § 2. (ECF No. 39 at 1). At Count Two ("Count II"), the Grand Jury charged Mr. Addleman and Mr. Nevling with Conspiracy to Maliciously Destroy Property by Explosive or Fire, in violation of 18 U.S.C. § 844(n). (ECF No. 39 at 1). At Count Three ("Count III"), the Grand Jury charged Mr. Addleman alone with Malicious Destruction of Property by Explosive or Fire Resulting in Death, in violation of 18 U.S.C. § 844(i). (ECF No. 39 at 1). Finally, at Count Four ("Count IV"), the Grand Jury charged Mr. Addleman alone with Conspiracy to Distribute and Possess with Intent to Distribute a Quantity of Methamphetamine, in violation of 21 U.S.C. § 846. (ECF No. 39 at 2).

On February 12, 2025, Mr. Addleman filed a Motion to Sever, requesting that he be tried separately from Mr. Nevling. (ECF No. 88 at 5). On February 21, 2025, Mr. Nevling expressed his "support of the Motion to Sever Defendant filed by Mr. Addleman." (ECF No. 92 at 1). For its part, on February 27, 2025, the Government "agree[d] that the requested severance should be granted." (ECF No. 95 at 4). On March 12, 2025, the Court entered a Memorandum and Order of

1

Court providing that, "pursuant to Rule 14(a) of the Federal Rules of Criminal Procedure … the trials of [Mr. Nevling and Mr. Addleman] hereby are severed, and the two defendants shall be tried separately[.]" (ECF No. 97 at 2). The Court held Mr. Nevling's trial in August 2025. (ECF Nos. 185, 187-189, 192-195). At the conclusion of that trial, the jury found Mr. Nevling guilty of the offenses at Counts I and II of the Superseding Indictment. (ECF No. 200).

In March 2026, Mr. Addleman proceeded to trial on Counts I–IV. (ECF Nos. 317, 320, 322–24, 326–28). At the close of the Government's case, the Court denied Mr. Addleman's Oral Motion for a Judgment of Acquittal Pursuant to Federal Rule of Criminal Procedure 29(a). (ECF No. 353 at 81–82). On March 18, 2026, the Jury returned a verdict of guilty as to each of Counts I, II, III, and IV. (ECF No. 331). At Counts II and III, the jury also unanimously found "that the [G]overnment has proved beyond a reasonable doubt that death resulted to a person as a direct and proximate result of the explosion or fire that occurred on or about October 4, 2019, at 327 E. Market Street in Clearfield, Pennsylvania[.]" (*Id.* at 1).

Presently before the Court is Mr. Addleman's "Motion[] for Judgment of Acquittal and for a New Trial[,]" which he filed on June 16, 2026. (ECF No. 358). On June 30, 2026, the Government filed its Response in Opposition. (ECF No. 365). Finally, on July 6, 2026, Mr. Addleman filed a Reply. (ECF No. 367). For the following reasons, the Court DENIES Mr. Addleman's Motion at ECF No. 358.

## I.      Renewed Motion for Judgment of Acquittal

In his Motion at ECF No. 358, Mr. Addleman argues that the "Government failed to satisfy the essential elements of Counts I, II, [and] III of the [Superseding] Indictment during its case-in-chief and as such a rational jury could not reasonably and in good faith find Mr. Addleman guilty beyond a reasonable doubt[.]" (*Id.* at 5). Mr. Addleman contends that the Court should therefore

"enter judgment of acquittal forthwith." (*Id.*). In addition to his general assertion about the Government failing to meet its burden, Mr. Addleman specifically and repeatedly argues that the Government relied on the testimony of "unreliable confidential informants" and cooperating witnesses during trial. (*Id.* at 6–12). Further, Mr. Addleman contends that there was "no meaningful physical evidence connecting [him] to the bombing[,]" or evidence of a physical connection between Mr. Addleman and the bomb itself, such as fingerprints. (*Id.* at 6, 12). Rather, the "Government's proof of identity depended almost entirely upon witnesses who expected a personal benefit." (*Id.*).

## A.    Standard

"'[T]he Rule 29 judgment of acquittal is a substantive [judicial] determination that the prosecution has failed to carry its burden.'" *United States v. John-Baptiste*, 747 F.3d 186, 200 (3d Cir. 2014) (quoting *Smith v. Massachusetts*, 543 U.S. 462, 468 (2005)). A defendant "challenging the sufficiency of the evidence" pursuant to Rule 29 "bears a heavy burden." *Id.* (quoting *United States v. Casper*, 956 F.2d 416, 421 (3d Cir. 1992)).

In deciding whether to grant a motion for acquittal, the trial court is required to view the evidence in the light most favorable to the prosecution and to draw all reasonable inferences in the Government's favor. *United States v. Ashfield*, 735 F.2d 101, 106 (3d Cir. 1984). The court "must determine whether the government has adduced sufficient evidence respecting each element of the offense charged to permit jury consideration." *United States v. Giampa*, 758 F.2d 928, 934-35 (3d Cir. 1985). A reviewing court "must be ever vigilant . . . not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting [its] judgment for that of the jury." *United States v. Caraballo–Rodriguez*, 726 F.3d 418, 430 (3d Cir. 2013) (quoting *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005)). Courts must "review the evidence as a

whole, not in isolation, and ask whether it is strong enough for a rational trier of fact to find guilt beyond a reasonable doubt" and must "sustain the jury's verdict if there is substantial evidence, viewed in the light most favorable to the government, to uphold the jury's decision." *Id.* (internal quotation marks and citation omitted)). The jury's verdict must be assessed from the perspective of a reasonable juror, and the verdict must be upheld as long as it does not "fall below the threshold of bare rationality." *Id.* at 431 (quoting *Coleman v. Johnson*, 566 U.S. 650, 656 (2012)).

**B.      Analysis**

**1.  Mr. Addleman's Overarching Arguments Are Unavailing**

Before turning squarely to the issue of whether there is substantial evidence, viewed in the light most favorable to the government, to uphold the jury's decision at each of Counts I, II, and III, the Court will address two of Mr. Addleman's overarching contentions regarding the Government's case against him. The Court does so because those arguments have bearing on the Court's analysis at each of Counts I, II, and III, and the Court finds that resolution of these overarching issues at the outset will help to frame the Court's analysis below.

First, as the Court previously observed, *see supra* Section I, Mr. Addleman makes much of the Government's use of confidential informants and cooperating witnesses at trial and seems to contend that the fact of their cooperation (perhaps coupled with other factors) made any reliance by the jurors upon their testimony unreasonable. (*See* ECF No. 358). However, Mr. Addleman's argument suffers from a significant flaw that ultimately renders it unavailing. Specifically, the Court, the Government, and Mr. Addleman all informed the jury of the fact that certain witnesses were offering testimony as confidential informants/cooperating witnesses. Indeed, in its final instructions to the jury, the Court noted that the jury had "heard evidence that some witnesses have made a plea agreement with the Government or received and/or expect to receive a benefit from

4

the Government in exchange for testifying" and instructed the jury on how to consider that evidence, admonishing it to consider these individuals' testimony "with great care and caution." (ECF No. 354 at 62–63). Further, as the Government correctly points out, it adduced testimony from these witnesses "about their criminal history, cooperation, and any benefit they may have received from the Government" on direct examination. (ECF No. 365 at 18). And Mr. Addleman himself observes that his own "cross examination of Carlos Harris, Cecil Pinnix, Shamir Adams, Chad Schwartz, Amy Krause, and Nichole Coleman all showed some type of incentive" for their testimony. (ECF No. 367 at 10).

These facts are critically important because, where the jury is squarely informed of the fact of a witness's motivations, potential bias, and the like, the Third Circuit has held that it is for the jury to "decide whether or not to believe [that witness's] testimony." *United States v. Salahuddin*, 765 F.3d 329, 346 n.10, 348–49 (3d Cir. 2014) (holding, on appeal from District Court's denial of post-trial motions, that it could "entirely reject" defendant's arguments about a witness's credibility and motives where the jury was "made aware—through cross examination, closing arguments, and the jury instructions—of [that witness's] motivations, potential bias, and inconsistent testimony[,]" including the fact that witness was cooperating with the government and later reiterating that to the extent the defendant had challenged this same witness's "credibility, the jury knew of his potential bias … yet still a rational trier of fact could have credited his testimony"); *United States v. Smith*, 294 F.3d 473, 478 (3d Cir. 2002) (noting that, when a court is confronted with a Rule 29 motion, it is not that court's job to "weigh the evidence or to determine the credibility of witnesses") (cleaned up). Indeed, in light of all of the foregoing, as well as the Court's familiarity with this case in general, the Court holds that the "histories and potential motivations

5

of the [confidential informants/]cooperating witnesses do not render reliance on their testimony [by the jury] unreasonable." *United States v. Little*, 314 F. Supp. 3d 647, 654–55 (E.D. Pa. 2018).

Second, with respect to Mr. Adleman's argument about the Government not producing physical evidence, like fingerprints, connecting him to the bomb, *see supra* Section I, the Court instructed the jury, in accordance with the Third Circuit's Model Jury Instruction 4.14, that there "is no legal requirement that the Government use [specific investigative techniques such as fingerprint analysis or DNA analysis] or all possible techniques to prove its case." (ECF No. 354 at 61); *United States v. Brown*, 658 F. App'x 100, 104 (3d Cir. 2016) (indicating that it had no trouble upholding the use of its Model Criminal Jury instruction 4.14); *United States v. Peterson*, 622 F.3d 196, 208 (3d Cir. 2010) ("We have a hard time concluding that the use of our own model jury instruction can constitute error[.]"). And Mr. Addleman has not referred the Court to any legal provision requiring the Government to use a particular investigative technique or provide a specific category of evidence in order to prove any of the offenses at Counts I–III. (*See* ECF Nos. 358, 367); *United States v. Curry*, 158 F.4th 153, 161 (3d Cir. 2025) ("The United States was only tasked with proving the elements set down by Congress, not doing so in every conceivable way."). Therefore, the Court rejects as unavailing Mr. Addleman's argument regarding the Government not introducing specific types of evidence such as fingerprints.

Ultimately, based on the Court's familiarity with and review of the Government's evidence in this case, and when the Court views that evidence in the light most favorable to the Government, the Court finds that the direct and circumstantial evidence presented by the Government is substantial (and indeed quite substantial) to uphold the jury's verdict of guilty at each of Counts I, II, and III. The Court now explains that finding at each Count.

**2. Viewing the Evidence in a Light Most Favorable to the Government, the Government Produced Substantial Evidence to Uphold the Jury's Verdict of Guilty at Counts I, II, and III**

Although Counts I, II, and III contain distinct elements, the evidence tending to support the jury's verdict at each Count is interwoven. The Court therefore discusses the substantial evidence supporting the jury's verdict at all three Counts together. In doing so, the Court will first recite the elements of Counts I, II, and III. The Court will then overview particular pieces of evidence that strongly support the jury's verdict. Finally, the Court will explain how that evidence, taken in a light most favorable to the Government, constitutes substantial evidence to uphold the jury's decision at each Count.

**a.    Elements of Counts I, II, and III**

At Count I, the Government was required to prove each of the following essential elements: (1) Mr. Adleman knowingly possessed a firearm; (2) this firearm was a destructive device, which is defined to include a bomb; (3) that Mr. Addleman knew of the characteristics of the firearm; that is, that it was a bomb; (4) that this destructive device was or could readily have been put in operating condition; and (5) that this destructive device was not registered to Mr. Addleman in the National Firearms Registration and Transfer Record. (ECF No. 354 at 72). It does not matter whether Mr. Addleman knew that the destructive device was not registered or had to be registered. (*Id.*); *Peterson*, 622 F.3d at 208 ("We have a hard time concluding that the use of our own model jury instruction can constitute error[.]").

At Count II, the Government was required to prove each of the following essential elements: (1) that two or more persons agreed to commit an offense against the United States, namely the offense of malicious damage and destruction of a building by means of an explosive device or fire; (2) that Mr. Addleman was a party to or member of the agreement with another

7

alleged co-conspirator and others; and (3) that Mr. Addleman joined the agreement or conspiracy knowing of its objective to maliciously destroy property by explosive or fire and intending to join together with at least one other alleged conspirator to achieve that objective; that is, that Mr. Addleman and at least one other alleged conspirator shared a unity of purpose and the intent to achieve those objectives. (ECF No. 354 at 74); *Peterson*, 622 F.3d at 208 ("We have a hard time concluding that the use of our own model jury instruction can constitute error[.]").

At Count III, the Government was required to prove each of the following essential elements: (1) that Mr. Addleman set a fire or caused a fire to be set or used an explosive or caused an explosive to be used in order to damage or destroy property; (2) that Mr. Addleman acted maliciously; and (3) that the property was used in interstate commerce or in an activity affecting interstate commerce. (ECF No. 354 at 83); *Peterson*, 622 F.3d at 208 ("We have a hard time concluding that the use of our own model jury instruction can constitute error[.]").

Finally, at Counts II and III, the jury was given a Special Interrogatory asking whether the Government had proven beyond a reasonable doubt that a person was killed as a direct and proximate cause of the explosion. (ECF No. 354 at 74–75, 83–84).

### b.    Examples of Evidence Supporting the Jury's Verdict

The following evidence is not an exhaustive list of the evidence supporting the jury's verdict at Counts I, II, and III—in the Court's estimation, the evidence against Mr. Addleman was exceedingly strong. Rather, the Court now sets forth certain particular portions of the Government's evidence that clearly warrant the denial of Mr. Addleman's request for a judgment of acquittal.

The Court begins by reiterating certain Facebook messages that were sent from a page bearing indicia that it was owned and operated by the victim of the offenses at Counts I, II, and

III, Shanna Carlson ("Ms. Carlson"). For example, on August 3, 2019, Ms. Carlson engaged in a Facebook chat with Storm Armagost ("Mr. Armagost"). (ECF No. 352 at 155). Therein, Ms. Carlson indicated that: (1) "Clint" had called her earlier in the evening and just called her again, (2) she owed "Clint" a thousand dollars, and (3) she was afraid of "Clint." (*Id.* at 157). Nine days later, Ms. Carlson engaged in another Facebook chat, in which she indicated that a "dude" was "trying to legit kill me … He just threatened me and was outside my apartment again today and tonight." (*Id.* at 158). This evidence would support a jury's finding that Ms. Carlson owed Mr. Addleman a debt that was making her afraid, perhaps even afraid for her life.

Further, Mr. Addleman himself states that the Government "established 327 East Market Street was damaged and destroyed by means of an explosive and fire and [Ms. Carlson] died as a result of the destruction[.]" (ECF No. 358 at 10). The Court certainly agrees that, viewing the evidence in a light most favorable to the Government, the Government presented substantial evidence at trial to support those conclusions.

The Court pauses here to make a brief observation—even in this short recitation of a fraction of the Government's evidence, there is a growing connection between: (1) Mr. Addleman, (2) a drug debt that Ms. Carlson owed to him, and (3) Ms. Carlson's death by bombing. To be sure, the evidence that the Court just cited, *standing alone*, likely would not support a conviction at Counts I through III, but it does put Mr. Addleman in a unique category of people with a far greater incentive to harm Ms. Carlson. And it is far from the only evidence that the Government presented at trial.

Indeed, during trial, Christine Robison ("Ms. Robison") testified[1] that, prior to the explosion, Mr. Addleman had come to her house and asked her for a box. (ECF No. 351 at 100).

---

[1] Both the Government and Mr. Addleman asked Ms. Robison questions pertaining to her credibility. The Government inquired about where she was incarcerated at the time of trial and whether the Government or any other law

After she got him two boxes that were not the correct size, she asked him what he needed a box for, to which he replied that "he was going to get rid of the bomb." (*Id.*). According to Ms. Robison, Mr. Addleman also asked her if she would "be willing to write" something along the lines of "Sorry this is late. Or: I haven't seen you for awhile. You know: Here's a surprise for you" on a box. (*Id.* at 100–01). The Court notes that these statements are very similar to the ones that were in fact written on the box containing the bomb that was ultimately delivered to Ms. Carlson. Finally, Ms. Robison testified that, a day or two after the explosion, Mr. Addleman came to her residence. (*Id.* at 99). When Ms. Robison raised the issue of the explosion to Mr. Addleman, he responded that he "wasn't worried about it … he made sure he was nowhere around when that happened." (*Id.* at 99–100).

At this point, the connection between: (1) Mr. Addleman, (2) a drug debt that Ms. Carlson owed to him, and (3) Ms. Carlson's death by bombing could certainly become even stronger in the mind of a rational juror.

In a similar vein, Thaer Mustafa ("Mr. Mustafa") testified[2] at trial that he had gotten to know Mr. Addleman fairly well whenever the two were incarcerated together. (ECF No. 350 at 212). According to Mr. Mustafa, during one of their conversations, Mr. Addleman said that he was incarcerated "for an explosion. He's a domestic terrorist, and a female passed away in the explosion." (*Id.* at 215). Further, Mr. Mustafa testified that Mr. Addleman said "that [Mr. Mustafa] looked like a terrorist, but he is a terrorist." (*Id.*). Finally, Mr. Mustafa stated that Mr. Addleman

---

enforcement agency had promised her anything in exchange for her testimony. (ECF No. 351 at 91–92). And Mr. Addleman asked her several similar questions. (*Id.* at 103–08).

[2] As with Ms. Robison, both the Government and Mr. Addleman asked Mr. Mustafa questions pertaining to his credibility. The Government inquired about where he was incarcerated at the time of trial and whether he was hoping to get a better sentence as a result of his testimony. (ECF No. 350 at 207–210). And Mr. Addleman asked him several similar questions. (*Id.* at 217–28).

told him about what he used in the explosion, and that he had another guy who helped "soup it up." (*Id.* at 215–16).

At this point, viewing the evidence in a light most favorable to the Government, a reasonable juror could certainly see a very strong and substantial connection between: (1) Mr. Addleman, (2) a drug debt that Ms. Carlson owed to him, and (3) Ms. Carlson's death by bombing. And, in Mr. Mustafa's statement about the other guy who helped Mr. Addleman "soup [] up" the device used in the explosion, that same juror could also begin to see the potential emergence of a co-conspirator.

During trial, Carlos Harris ("Mr. Harris") testified[3] that, while he and Mr. Addleman were incarcerated together, Mr. Addleman said that "he made a bomb and [Mr.] Nevling—basically, all he had to do was deliver it, but he started telling everybody, and he's a rat." (ECF No. 349 at 167). According to Mr. Harris, Mr. Addleman also told him details about how he made the bomb. (*Id.*).[4] In like fashion, Cecil Pinnix ("Mr. Pinnix") testified[5] that, when he was incarcerated with Mr. Addleman, Mr. Addleman had told him that he "wasn't worried about his co-defendant testifying against him because he would … implicate his self [sic] as well." (ECF No. 353 at 31).

At this point, viewing the evidence in a light most favorable to the Government, a reasonable juror could see a very strong and substantial connection between: (1) Mr. Addleman

---

[3] As with Ms. Robison and Mr. Mustafa, both the Government and Mr. Addleman asked Mr. Harris questions pertaining to his credibility. The Government inquired about where he was incarcerated at the time of trial and whether he was hoping to get a reduced sentence as a result of his cooperation. (ECF No. 349 at 163–65). And Mr. Addleman asked him several similar questions. (*Id.* at 171–81).

[4] To the extent that Mr. Addleman otherwise challenges Mr. Harris's credibility, those matters were likewise placed before the jury for its consideration. (ECF No. 358 at 9). *United States v. Salahuddin*, 765 F.3d 239, 347 (3d Cir. 2014) ("It was the jury's responsibility to weigh [the witness's] credibility considering his entire testimony …").

[5] As with the other cooperating witnesses/confidential informants, both the Government and Mr. Addleman asked Mr. Pinnix questions pertaining to his credibility. The Government inquired about where he was incarcerated at the time of trial and whether he was hoping to get a reduced sentence as a result of his cooperation. (ECF No. 353 at 24–27). And Mr. Addleman asked him several similar questions. (*Id.* at 39–46, 48–49).

and Mr. Nevling, (2) a drug debt that Ms. Carlson owed to Mr. Addleman, and (3) Ms. Carlson's death by bombing. And that reasonable juror could see that connection on the evidence above alone, without even taking stock of the Government's other persuasive evidence in this case, such as the evidence that Mr. Addleman had bomb parts in his basement that seemed to bear a connection to the bomb that destroyed 327 E. Market Street and killed Ms. Carlson. (ECF No. 365 at 8–10).

### c.    Taken in a Light Most Favorable to the Government, This Evidence is Substantial Evidence That is More Than Sufficient to Uphold the Jury's Verdict of Guilty at Each of Counts I, II, and III

Turning to the offense at Count I, the parties reached the following Joint Stipulation in advance of trial:

> Section 5841 of the National Firearms Act (Chapter 53, Title 26, United States Code) provides that the Attorney General of the United States or an authorized delegate shall maintain a central registry of all firearms not in the possession or under control of the United States which come within the purview of 26 U.S.C. Chapter 53. That central registry is known as the National Firearms Registration and Transfer Record and is maintained at the Bureau of Alcohol, Tobacco, Firearms and Explosives in Washington, D.C. [Mr.] Nevling has never registered any firearm, including any destructive device, in the National Firearms Registration and Transfer Record (Exhibit 62). [Mr.] Addleman has never registered any firearm, including any destructive device, in the National Firearms Registration and Transfer Record (Exhibit 63).

(ECF No. 304 at 1–2). The Court provided this Stipulation to the jury for its deliberations. (ECF No. 354 at 59). The Court holds that this Stipulation, coupled with the foregoing testimony by Ms. Robison, Mr. Mustafa, and Mr. Harris, as well as all of the Government's other evidence in this case, is more than substantial evidence, when viewed in the light most favorable to the Government, for a rational trier of fact to find Mr. Addleman guilty of the offense at Count I of the Superseding Indictment beyond a reasonable doubt. *See supra* Section I.B.2.a.

Turning to the offenses at Counts II and III, the parties stipulated that the "property at 327 E Market Street, Clearfield, Pennsylvania, was a multi-unit apartment building." (ECF No. 304 at 4). It was "real property used in interstate and foreign commerce, in that the tenants of the apartments located in the building paid money as rent to the owner of the building, James Whited, affecting interstate commerce." (*Id.*). The Court provided this Stipulation to the jury for its deliberations. (ECF No. 354 at 59). Further, the Court reiterates Mr. Addleman's statement that the evidence "established 327 East Market Street was damaged and destroyed by means of an explosive and fire and [Ms. Carlson] died as a result of the destruction[,]" (ECF No. 358 at 10), and the Court's strong agreement with that statement. Finally, the Court refers back to all of the evidence in the preceding subsection, *see supra* Section I.B.2.b, as well as all of the other evidence in this case. When the Court examines all of this evidence in a light most favorable to the Government, it finds more than substantial evidence for a rational trier of fact to find Mr. Addleman guilty of the offenses at Counts II and III of the Superseding Indictment beyond a reasonable doubt. *See supra* Section I.B.2.a. In a similar vein, when examining the evidence in a light most favorable to the Government, the Court has no difficulty finding substantial evidence from which a rational juror could conclude that the Government had proven beyond a reasonable doubt that a person was killed as a direct and proximate cause of the explosion. *See supra* Section I.B.2.a.

## C.  Conclusion

The Third Circuit Court of Appeals has made clear that "[i]t is up to the jury—not the district court judge or our Court—to examine the evidence and draw inferences. Unless the jury's conclusion is irrational, it must be upheld." *Caraballo-Rodriguez*, 726 F.3d at 432. Here, based on the evidence before it, the jury's conclusion that Mr. Addleman committed the offenses at Counts

I, II, and III was clearly rational, as was its conclusion that the Government had proven beyond a reasonable doubt that a person was killed as a direct and proximate cause of the explosion. Because the jury's guilty verdict on all three Counts and the Special Interrogatories certainly did not fall below the "threshold of bare rationality," it must be upheld. Accordingly, the Court will deny Mr. Addleman's request for judgment of acquittal.

## II.    Motion for New Trial

In his Motion at ECF No. 358, Mr. Addleman also requests a new trial pursuant to Rule 33(a) of the Federal Rules of Criminal Procedure. In doing so, Mr. Addleman again argues that the Government's evidence "rested heavily on incentivized, unreliable testimony." (*Id.* at 11) (emphasis removed). Further, Mr. Addleman contends that, although the Court admitted certain evidence at trial pursuant to Rule 404(b), the Government ultimately used that evidence to show propensity. (*Id.* at 14). He asserts that this fact is best exhibited by one of the Government's statements during its closing argument. (*Id.*).

### A.    Standard

Federal Rule of Criminal Procedure 33(a) permits a court to "vacate any judgment and grant a new trial if the interest of justice so requires." The decision to grant or deny a motion for new trial lies within the court's discretion. *United States v. Vitillo*, 490 F.3d 314, 325 (3d Cir. 2007).

In considering a motion for new trial, this Court should "'exercise great caution in setting aside a verdict reached after fully-conducted proceedings,' and particularly so where 'the action has been tried before a jury.'" *United States v. Kelly*, 539 F.3d 172, 182 (3d Cir. 2008) (*quoting United States v. Kamel*, 965 F.2d 484, 493 (7th Cir. 1992)). A district court may order a new trial "'only if it believes that there is a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted.'" *United States v. Staten*, 557 F. App'x 119, 121

14

(3d Cir. 2014) (quoting *United States v. Silveus*, 542 F.3d 993, 1004–05 (3d Cir. 2008). Indeed, Rule 33 Motions "are not favored and should be granted sparingly and only in exceptional cases." *Silveus*, 542 F.3d at 1005 (cleaned up). Finally, unlike a Rule 29 Motion, "the Court does not view the evidence in the light most favorable to the [G]overnment; instead, the Court exercises its own judgment in evaluating the evidence presented by the [G]overnment[.]" *United States v. Hill*, No. 3:22-cr-21, 2025 WL 3652924, at *6 (W.D. Pa. Dec. 17, 2025) (citing *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002)).

### B.    Analysis

Turning first to Mr. Addleman's arguments about cooperating witnesses, the Court reiterates its earlier point that the jury was fully aware of their motivations and potential bias. *See supra* Section I.B.1. Equipped with this knowledge, "it was the jury's responsibility to decide whether or not to believe [each witness's] testimony." *United States v. Salahuddin*, 765 F.3d 329, 346 (3d Cir. 2014). The Court therefore again finds this argument unavailing.

In a related vein, the Court stresses that, when it exercises its own judgment, it finds that the weight of the Government's evidence against Mr. Addleman in this matter was quite strong and more than supported the jury's verdict of guilty on all Counts and the Special Interrogatories. The Court has no concern whatsoever that an innocent person was convicted here.

Turning next to Mr. Addleman's argument about the Rule 404(b) evidence, he contends that the Court permitted the Government to introduce evidence under that Rule indicating that Mr. Addleman had made a bomb prior to this case. (ECF No. 358 at 13–14). However, according to Mr. Addleman, in the Government's closing argument, it stated that Mr. Addleman would take individuals to his basement, where he showed off all the explosive components that he had, in order "to instill fear in them." (*Id.* at 14); (ECF No. 354 at 7). Mr. Addleman argues that this

15

statement made it clear that the Government was not introducing this evidence about a bomb for a proper Rule 404(b) purpose, but rather to show propensity, namely, that "Mr. Addleman had bomb parts, had built bombs previously, and did it again in this case[.]" (ECF No. 358 at 14).

For multiple reasons, this assertion does not lead the Court to grant Mr. Addleman a new trial. First, having examined the context for the Government's statements on this issue in its closing argument, it appears to the Court that the Government may well have been referring, at least in significant measure, to evidence that was likely intrinsic evidence in this case, not the Rule 404(b) evidence that was the subject of pre-trial litigation in this matter. (ECF No. 354 at 7–8). If that is the case, the Government was certainly free to use its intrinsic evidence to argue that Mr. Addleman committed one or more of the offenses with which he was charged. Second, Mr. Addleman did not object to this line of argumentation by the Government during or at the conclusion of the Government's closing argument. (*See* ECF No. 354). And third, the Government explicitly instructed the jury, *following the Government's closing argument*, about the only proper purposes for which it could consider the Rule 404(b) evidence in this case. (ECF No. 354 at 65– 66). Therefore, because of the Court's instruction to the jury on this matter, coupled with the Government's evidence against Mr. Addleman, which the Court deems overwhelming, the Court denies his request for a new trial, even assuming without deciding that the Government made a slight misstep in its use of evidence pertaining to bombs, as Mr. Addleman argues that it did. *Cf. United States v. Thornton*, 1 F.3d 149, 156–57 (3d Cir. 1993) (holding that, where, on four occasions, the trial court admitted evidence that was inadmissible or witnesses made remarks that should not have been heard by the jury, a new trial was not warranted because: (1) the court issued a curative instruction as to three of these errors, (2) the other error was clearly harmless because the statement that the court admitted improperly was duplicative of other evidence, and (3) even

when all four errors were taken together, a new trial was still not warranted due to the trial court's curative instructions and "the overwhelming evidence of the defendants' guilt"); *see also United States v. MacInnes*, 23 F. Supp. 3d 536, 541 (E.D. Pa. 2014) ("Harmless errors that do not deprive a defendant of a fair trial provide no basis for granting a defendant's Rule 33 motion.")

## C.    Conclusion

The Third Circuit Court of Appeals has recognized that motions for a new trial under Rule 33 "'are not favored and should be granted sparingly and only in exceptional cases.'" *United States v. Wrensford*, 866 F.3d 76, 93 n. 9 (3d Cir. 2017) (*quoting United States v. Silveus*, 542 F.3d 993, 1005 (3d Cir. 2008)). For the reasons above, the Court holds that this is certainly not an exceptional case. Because Mr. Addleman has failed to show a new trial is required in the interest of justice, the Court denies his request for a new trial.

An appropriate Order will be entered.

Dated:  July 13, 2026

Stephanie L. Haines
United States District Court Judge

17